Martha J. FREEMAN et al., Appellants,

v.

TEXAS COMPENSATION INSURANCE COMPANY, Appellee.

No. 18112.

Court of Civil Appeals of Texas, Fort Worth.

Aug. 2, 1979.

Rehearing Denied Sept. 13, 1979.

Norman & Bates and Roger M. Norman, Fort Worth, for appellants.

Morgan, Gambill & Owen and Judge Gambill, Fort Worth, for appellee.

## OPINION

HUGHES, Justice.

Beneficiaries under the worker's compensation law appeal a judgment rendered that they take nothing on their suit for death benefits. They claim the trial court erred in granting the insurance company's motion for judgment notwithstanding the jury's verdict and in rendering the take nothing judgment. They claim there is evidence to support the jury's verdict that the worker died from injuries sustained in the scope of his employment.

### ON APPELLEE'S MOTION TO CORRECT RECORD

Texas Compensation Insurance Company filed a motion to correct the transcript in this case asking this court to strike an item in it.. The item complained of is styled "Plaintiffs' Bill of Exception Number One". The compensation carrier contends that this item is not a proper bill of exception because it was signed only by the plaintiffs' counsel. It also complains that the item is not an instrument authorized to be filed among the papers of the trial court nor brought up in the transcript on appeal.

While we agree that when the bill of exception is not properly certified by the trial court it has no efficacy and will not be

considered nor affect the decision on appeal, we must deny appellee's request that it be stricken from the transcript. The district clerk is required to file among the papers of the trial court all instruments presented for filing. The efficacy of the instruments presented for filing is not a question with which the district clerk need be concerned.

It is also the duty of the district clerk to include in the transcript all instruments on file in the case in the trial court which are requested to be included by the party requesting the preparation of the transcript for appeal. Again the efficacy of the instrument as a part of the transcript is not a question with which either the district clerk or the clerk of the court of civil appeals need be concerned. The instrument of which appellee complains is properly included in transcript. However, as we have indicated, the bill of exception is not properly certified by the trial court. Therefore, we have not considered it nor does it have any affect on our decision below.

Appellee's motion is overruled.

### ON THE MERITS

We reverse and render in part and remand in part.

Martha Freeman is the widow of a former Southwestern Bell Telephone Company employee, Jimmy Bolding. She remarried after Bolding's death. She and Bolding had two children. Bolding was killed on Saturday, September 14, 1974 when his car hit a concrete embankment on a freeway in Fort Worth. Mrs. Freeman filed suit individually and as next friend of her two minor children as beneficiaries under the Worker's Compensation Act for death benefits. She claims her husband was killed while in the scope of his employment.

Southwestern Bell's compensation carrier denied liability contending that Bolding either was not on the job at the time of the collision or that he committed suicide by intentionally crashing into the embankment. The case was tried before a jury. Only one special issue was submitted. It inquired whether Bolding's death resulted from injuries sustained in the scope of his employment. The jury found that he was in the scope of his employment. The trial court granted the insurance company's motion for judgment n. o. v. The court concluded that there was no evidence supporting the verdict and rendered a judgment that the beneficiaries take nothing.

The beneficiaries claim there is evidence supporting the jury verdict. In reviewing the record in this case and deciding this question we are guided by the rule that all evidence must be considered in the light most favorable to the jury verdict, and every reasonable inference deductible from the evidence is to be indulged in favor of the verdict. Only the evidence and inferences that support the verdict should be considered and all contrary evidence and inferences should be disregarded. *Dodd v. Texas Farm Products Co.*, 576 S.W.2d 812 (Tex.1979).

The record reflects that Bolding was a PBX installation foreman. He supervised a crew of workers who installed certain equipment. Prior to this assignment he was a repair foreman in charge of a repair crew. We find that it was established that even though Saturday, September 14, 1974, was not a regular work day for Bolding, he went to work that morning. He was seen by a number of Bell employees at the Cockrell Street office where he picked up work orders and gave them to his crew. He was then seen at the Walnut Exchange Test Center where he was given a report of trouble with equipment at the Nurses' Training Center at Texas Christian University.

Later, at about 10:30 that morning Bolding was given a polygraph examination at an office in the Commerce Building in downtown Fort Worth. This examination was in the course of Bell's investigation of a criminal complaint filed against Bolding with the Fort Worth Police Department. Although there is a dispute as to whether Bolding or Bell requested the examination, we conclude that Bolding was in the scope of his employment with Bell while being examined because it was in the course of

Bell's investigation of the incident. The examination ended shortly before 2:00 p. m.

■ Although there is some doubt as to the exact time of his death, Bolding died shortly after 2:00 p. m. on a Fort Worth freeway a few miles from downtown. There is no direct evidence of where Bolding was going when he left the Commerce Building. Even though it was established that he was in the scope of his employment on Saturday until around 2:00 p. m., there is no direct evidence of whether he continued in the scope of his employment or whether he had quit working and was going home or on some personal mission. However, an ultimate fact may be established by circumstantial evidence. *Gregory v. Texas Emp. Ins. Ass'n.,* 530 S.W.2d 105 (Tex.1975). Thus we must decide whether there is any circumstantial evidence from which the jury could have properly inferred that Bolding was in the scope of his employment at the time of his death.

There is evidence in the record that it is Bell's policy to have a foreman on duty whenever there is a crew in the field. It was established that Bolding's crew was in the field at the time of Bolding's death. Bell's crews were scattered at various locations from Forest Hill to Benbrook. Part of a foreman's responsibility was to drive from job to job to supervise and also to pre-survey future jobs. Bolding had been given a service order to be completed as soon as possible. This job was, in fact, completed by his crew at 4:00 p. m. on the day he died. Bolding died within the district to which he was assigned. There were several locations of Bell crew personnel and offices along the route which Bolding was traveling at the time of the collision.

Mrs. Freeman contends that she is entitled to the benefit of a presumption based on the evidence outlined above. She claims there is a presumption that when an employee is found dead where the worker might properly have been in the performance of his duties, the death arose out of and in the scope of his employment. *Scott v. Millers Mutual Fire Insurance Co. of Texas,* 524 S.W.2d 285 (Tex.1975). We need

not rule on the applicability of any presumption in this case because of the presence of evidence in the record from which the jury could have found that Bolding was going home and/or committed suicide. Thus any such presumption would have been rebutted.

However, as stated in *Scott, supra* : "Although any presumption of course of employment has been dispelled by the introduction of evidence to the contrary, the facts upon which petitioner would base the presumption have not disappeared. They remain in evidence and will support any inferences that may properly be drawn therefrom." 524 S.W.2d 288. Thus, even though we decide that any presumption would have been rebutted, we cannot say that there is no evidence from which the jury would infer that Bolding was on the job at the time of the fatal collision. We conclude that there is evidence in the record which supports the inference made by the jury.

Our decision in this regard is again guided by *Scott.* There a workman was seen at a place where employees typically gathered before punching in on a time clock and going to work. There was no evidence that the worker punched in and actually began work. The worker was found dead at a place where his duties did not normally require him to be. He was found between some paper bales and some barrels. However, the supreme court decided that evidence that his duties as a metal sorter required that he occasionally climb up on the bales to count them and the fact that he was found at a place where he might reasonably have been in the performance of his duties was some evidence when viewed in the light most favorable to the worker that would entitle the jury to reasonably conclude he was injured in the scope of his employment.

■ In our case it was established that Bolding was in the scope of his employment until the time he left the Commerce Building downtown. He was found dead within his area of responsibility. Part of his job was to travel from location to location. He

had a job which he was responsible to have completed as soon as possible. There were employees and offices of Bell along the route he was traveling. Thus we conclude that there is evidence in the record from which the jury could properly infer that Bolding was in the scope of his employment when he died.

The insurance company, in contending that the trial court did not err in rendering its judgment n. o. v., details evidence in the record from which the jury could have inferred that Bolding either was on his way home after leaving the Commerce Building in downtown Fort Worth or committed suicide by colliding with the concrete embankment. However, in considering the question of whether there is any evidence to support the jury verdict we disregard all evidence contrary thereto. "It was the jury's province to weigh all of the evidence and to decide what credence should be given to the whole or to any part of the testimony of each witness. 'The jury were the judges not only of the facts proved, but of the inferences to be drawn therefrom, provided such inferences were not unreasonable.'" *Dodd v. Texas Farm Products Co.*, 576 S.W.2d 812, 815 (Tex.1979). We hold that the inferences drawn by the jury in this case were not improper. The evidence upon which the insurance company relies is not so conclusive as to establish as a matter of law that Bolding was not in the scope of his employment at the time of his death either because he was going home or committed suicide.

■ The compensation carrier also claims that the evidence was insufficient to support the verdict because it required the jury to speculate where among several possible places Bolding was going at the time of his death. The insurance company relies on the general rule that a jury cannot properly reach a verdict on mere speculation and surmise. Had the jury been required to answer a special issue inquiring about exactly where Bolding was going at the time of his death this may have called for speculation and conjecture. However, this was not the case. The jury was not called upon to speculate about which of several places Bolding was going at the time where there was no evidence which made any particular destination more or less likely.

In this case the jury was asked to draw an inference from the circumstantial evidence whether Bolding was on the job or not at the time of his death. We distinguish this from cases where mere conjecture is required. We hold that this was a case properly decided by drawing a reasonable inference from circumstantial evidence. The trial court erred in rendering judgment not withstanding the jury verdict.

■ The compensation carrier has several cross-points of error presented in complaint of evidentiary rulings of the trial court. Several of these points complain of the exclusion of testimony of four defense witnesses regarding alleged conversations with Bolding about suicide. The trial court excluded this evidence holding that the conversations were too remote. From the insurance company's bills of exception it appears that Bolding had conversations with three fellow Bell employees while they lived in Wichita Falls and another conversation with another Bell employee after Bolding had moved to Fort Worth. The witnesses who testified about the alleged conversations in Wichita Falls stated they could not remember the dates the conversations took place. However, the fact that they took place while Bolding lived in Wichita Falls indicates that they took place between one and four years before Bolding's death.

The insurance company cites *Union Transports, Inc. v. Braun*, 318 S.W.2d 927 (Tex.Civ.App.—Eastland 1958, no writ), as authority for the rule that questions concerning remoteness are within the sound discretion of the trial court. We do not conclude that the exclusion of the testimony of the witnesses concerning the alleged conversations in Wichita Falls was an abuse of the trial court's discretion. The trial court is in the best position to make this determination. We note that there is no evidence in the record which indicates any similarity between the conditions in Wichita Falls and the conditions in which Bolding lived after

moving to Fort Worth. It is our opinion that the compensation carrier as the offeror of the evidence had the burden to show relevancy. One way might have been to show that the conditions had not changed. No such showing was made. Therefore, we conclude the trial court properly excluded the evidence.

■ In complaining of the exclusion of the testimony of the Bell employee who allegedly had a conversation with Bolding after he moved to Fort Worth, the insurance company contends the testimony was relevant. From the compensation carrier's bill of exception it appears that Bolding told the Bell employee, William Crossley, of an attempt he had made to commit suicide but aborted. The problem is that Crossley was unable to state when the alleged suicide attempt took place, because Bolding had not told him exactly when it took place. Crossley stated that it was possible that the attempt took place ten years before Bolding's death. Therefore we conclude that the insurance company failed to sustain its burden to show that the offered testimony was relevant to whether Bolding committed suicide on the day he died. It was not error to exclude Crossley's testimony.

■ The compensation carrier further complains of the admission of the testimony of a Bell employee. The employee had given Bolding the report of trouble with equipment at the Nurses' Training Center at Texas Christian University. The employee testified that Bolding said he would take care of the trouble. Over objection, evidence was admitted that the employee had the impression that Bolding would take care of the trouble on the day he died. Thus it was relevant to whether or not Bolding was in the scope of his employment at the time of his death. Because there was other evidence in the record sufficient to support the jury verdict we need not consider whether the admission of this testimony was error because error, if any in this regard, would be harmless under Tex.R.Civ.P. 434.

■ Also by a cross-point of error the insurance company contends that even if there is some evidence to support the jury verdict, the verdict is against the great weight and preponderance of the evidence. After carefully reviewing all the evidence in this case, we find there is ample evidence which would have supported a jury verdict that Bolding was not in the scope of his employment because he was either going home or committed suicide. This is a case in which reasonable minds can certainly differ and this court may have reached a different verdict had it been the trier of fact. However, it is not enough that reasonable minds could differ or that we may have reached a different result. The rule applicable to this case is well settled: To constitute reversible error sufficient to prevent rendition of judgment on the verdict, it must be so against the great weight and preponderance of the evidence to be manifestly wrong and unjust. Calvert *"No Evidence"* and *"Insufficient Evidence"* Points of Error, 38 Tex.L.R. 361 (1960). We do not conclude that the verdict is so against the preponderance of evidence to be manifestly wrong or unjust.

■ Having overruled each of the compensation carrier's crosspoints of error, we must now consider Mrs. Freeman's other points. Two of these points of error call upon us to construe the death benefits provisions of Tex.Rev.Civ.Stat.Ann. art. 8306 § 8 (Supp.1978). Section (a) of art. 8306 § 8 provides for payment of death benefits not to exceed $70.00 per week. It was stipulated that Bolding's wage rate would entitle his beneficiaries to the maximum $70.00 per week should they recover. Subsection (b) of art. 8306 § 8 provides that, upon remarriage of a surviving spouse, a lump sum payment equal to the benefits due for a period of two years shall be paid. Mrs. Freeman claims that the benefits due for a two year period should be calculated using the maximum amount of benefits, here $70.00 per week. The compensation carrier contends that since Bolding was also survived by children entitled to a portion of the benefits, that the lump sum payment should be calculated using the amount of Mrs. Freeman's share of the benefits. This amount would be $35.00 per week. It is our

opinion that the plain reading of the statute indicates that the proper calculation of the lump sum payment is made by using the amount payable to the surviving spouse. Here it will be $35.00 per week.

■ Our decision is based on the conclusion that subsection (a) provides for a maximum benefit to which the beneficiaries are entitled. We construe subsection (b) to provide that the share of the benefits, as determined by subsection (a), attributable to the surviving spouse shall continue until the spouse's death or remarriage. Upon remarriage the benefit to which the spouse was entitled, here $35.00 rather than $70.00 weekly for two years, shall be paid in a lump sum. We reason that this construction is consistent with the ceiling on benefits provided in subsection (a).

Mrs. Freeman also contends that, upon remarriage, each of her two children who survived Bolding are entitled to share $70.00 per week, the maximum benefit under subsection (a) of art. 8306 § 8. Subsection (b) provides that the benefits payable to the children shall continue after the remarriage of the surviving spouse. As above we construe the benefits payable to the children as their share of the benefits payable the beneficiaries under subsection (a). Here their share of the $70.00 per week maximum benefit is $35.00 per week. We hold it is their $35.00 share which continued after Mrs. Freeman's remarriage.

■ By a point of error Mrs. Freeman would have this court make a determination of attorney's fees under art. 8306 § 7d. This we cannot do because the section provides that the attorney's fee be fixed and allowed by the trial court. We therefore must remand the issue of attorney's fees to the trial court for its consideration and action.

Having found that the trial court erred in rendering judgment notwithstanding the verdict and having overruled each of appellees cross-points of error, we reverse the judgment of the trial court. We render judgment that appellants recover from appellee the statutory benefits and interest as provided in the Worker's Compensation Act. We remand this case to the trial court with instructions to render judgment for appellants consistent with the jury verdict, Worker's Compensation Act, and our opinion in this case. We also remand the issue of attorney's fees.

So ordered.