Linda Calaway BLANKENSHIP et al., Appellants,

v.

HIGHLANDS INSURANCE COMPANY, Appellee.

No. 20103.

Court of Civil Appeals of Texas, Dallas.

Jan. 4, 1980.

Rehearing Denied Feb. 1, 1980.

Bertran T. Bader, III, Bader & Cox, Dallas, for appellants.

Royal H. Brin, Jr., Strasburger & Price, Dallas, for appellee.

Before AKIN, STOREY and HUMPHREYS, JJ.

AKIN, Justice.

The question presented by this appeal is whether appellants, the minor children of the decedent, have a reversionary interest in the workman's compensation death benefits payable to the widow under the provisions of Tex.Rev.Civ.Stat.Ann. art. 8306 § 8 (Vernon 1967) and § 8(a) (Vernon Supp. 1978–1979). Because article 8306 § 8(a) fixes the workman's compensation carrier's liability to the beneficiaries at not less than $63 per week, we hold that upon remarriage of the widow the minor children have a reversionary interest in the death benefits previously paid to the widow. Accordingly, we reverse the judgment and remand with instructions to render judgment for the appellants.

The facts are undisputed and were stipulated in the trial court. Appellants' father died in the course of his employment. Appellee, Highlands Insurance Company, began paying workman's compensation benefits of $63.00 per week, the maximum weekly rate at that time. These benefits were paid $31.50 per week to the widow, and $31.50 per week to four minor children. The widow remarried and Highlands paid her a two year lump sum payment (104 weeks × $31.50) as required by article 8306 § 8(b), which Highlands claim terminated its obligation as to the $31.50 per week that it had been paying the widow. The weekly payments of $31.50 per week to the four minor children were continued, but the carrier declined to pay to the children the $31.50 weekly payment previously paid to the widow on the ground that the statute does not specifically require it to do so.

The widow sued as next friend of the minor children contending that since Tex. Rev.Civ.Stat.Ann. art. 8306 § 8(a) provides that the compensation carrier "shall pay" 66⅔ percent of the employee's average weekly wage, the carrier is required to pay the full $63.00 payment as long as beneficiaries are eligible. Thus, appellants argue that the lump sum of 104 weekly payments

to the widow satisfies the insurer's obligation as to the $31.50 per week paid to the widow for two years, but after the two year period covered by the lump sum, the children should begin receiving $63.00 per week, the full compensation rate. On the other hand, Highlands argues that since § 8(c) provides that the widow receives benefits formerly paid to the children if they become ineligible but contains no corresponding provision affording the children a reversion in the benefits payable to the widow, the legislature did not intend for the children to receive the full weekly payment. Thus, the only issue presented is whether the Workers' Compensation Act provides the minor children of the decedent with a reversionary interest in the weekly death benefits payable to the widow. Both sides moved for summary judgment on the stipulated facts. Appellants contend that the trial court erred in overruling her motion and granting that of Highlands.

A resolution of the issue presented requires a construction of that part of the Workers' Compensation Act concerning death benefits. Tex.Rev.Civ.Stat.Ann. art. 8306 § 8 (Vernon Supp.1978–1979) provides in part:

(a) If death results from the injury, *the association shall pay the legal beneficiaries* of the deceased employee a *weekly payment equal to sixty-six and two-thirds per cent (66⅔%) of the employee's average weekly wage, but not less than the minimum weekly benefit* nor more than the maximum weekly benefit set forth in Section 29 of this article.

(b) The weekly benefits payable to the widow or widower of a deceased employee shall be continued until the death or remarriage of the beneficiary. In the event of a remarriage a lump sum payment equal in amount to the benefits due for a period of two (2) years shall be paid to the widow or widower. The weekly benefits payable to a child shall be continued until the child reaches eighteen (18) years of age, or beyond such age if actually dependent, or until twenty-five (25) years of age if enrolled as a full-time student in any accredited educational in-

stitution. All other legal beneficiaries are entitled to weekly benefits for a period of three hundred and sixty (360) weeks.

(c) Upon the termination of the eligibility of any child to receive benefits, the portion of compensation paid to such child shall thereafter be paid to any remaining child or children entitled to benefits under the provisions of this Act. If there is no other eligible child then such benefits shall be added to those being paid to the surviving spouse entitled to receive benefits under the provisions of this Act. . . [Emphasis added.]

■ As we read this statute, paragraph (a) establishes the amount of the weekly compensation benefits that Highlands is required to pay, $63.00 in this case. Paragraphs (b) and (c) specify the recipients of this payment. Paragraph (b) provides that, " . . . benefits *payable to the widow or widower* . . . shall be continued until the death or remarriage . . . " In our view this provision specifies the length of time the widow or widower is entitled to a portion of the total benefits. Paragraph (b) does not limit the amount of benefits the insurance carrier is required to pay, but only specifies to whom the benefits shall be paid. Paragraph (b) also provides for a two year lump sum payment upon the widow's death or remarriage. The widow receives 104 weekly payments in a lump sum, terminating further payments to her. Paragraph (b) contains no language limiting the amount of weekly benefits fixed by paragraph (a). Paragraph (b) also provides that weekly benefits payable to a child shall be continued until age 18 or until age 25 if a full-time student. This phrase does not, however, fix the amount to be paid to any one child, since paragraph (c) specifically provides that a child's benefits will increase if other children become ineligible. Thus, this phrase cannot be read as limiting the amount of weekly benefits paragraph (a) requires the carrier to pay. The $63.00 amount is fixed by paragraph (a) of section 8 and paragraphs (b) and (c) provide no limitation on the amount to be paid as fixed

by paragraph (a), but merely specify to whom and when the amount fixed by paragraph (a) shall be paid. Accordingly, we hold that Highlands is required to pay the equivalent of $63.00 per week as long as a beneficiary is eligible. To hold as Highlands would have us do, would make paragraph (b) conflict with paragraph (a).

We find further support for our holding in § 8a[1] which provides that " . . . the right in such beneficiary or beneficiaries to recover compensation for death [is to] be determined by the facts that exist at the date of the death of the deceased and that [such] right be a complete, absolute and vested one." Highlands argues that this section refutes appellants' contention that the children have a reversionary interest in the widow's weekly benefits. We cannot agree. Section 8a does not fix, by the facts existing at the date of death, the amount of weekly payments to which any particular beneficiary is entitled. Furthermore, section 8 specifically provides that the amount of a beneficiary's weekly payment may be altered by circumstances occurring after the date of death of the deceased. Consequently, we view § 8a as supportive of appellants' position in that it creates a vested interest in the group of beneficiaries, entitling that group to the amount of weekly benefits fixed at the date of death by § 8(a). The insurance carrier is thereby obligated to pay $63.00 per week in benefits as long as a member of the group, in which the right is vested, remains eligible for benefits.

The strongest argument advanced by Highlands lies in the rule of expressio unius est exclusio alterius. Since the widow is specifically provided with a reversionary interest in the children's weekly benefits, *Id.* § 8(c), but the statute is silent as to a reversionary interest of the children in the widow's weekly benefits, that rule creates a presumption that the legislature intended to exclude any reversion in the children. *See* 2 J. Sutherland, Statutory Construction § 4915, at 412 (3rd ed. 1943). The maxim is not one of legal origin but is a product of logic and common sense, *Id.* § 4916, at 415, and requires great caution in its application. The absence of language from a statute does not force an unreasonable interpretation on the court. " . . . [W]here an expanded interpretation will . . . serve the purpose for which the statute was enacted, . . . the maxim will be refuted and an expanded meaning given." *Id.* § 4917, at 418–421. The construction which Highlands urges would provide that if the children die the day after the decedent, the wife would receive their benefits but if the wife dies subsequent to the decedent, her benefits are terminated. We perceive no reason why the legislature would intend such a result. The orphaned children would be in far greater need of the full weekly benefits than the widow who lost her children. The omission of a provision creating a reversionary interest in the children does not require us to reach such an unreasonable result. This is especially true because paragraph (a) fixes the amount of compensation the insurance carrier is required to pay. The provision creating the reversion in the widow, paragraph (c), does not limit the amount of the carriers liability but specifies to whom payments are to be made. Indeed, to hold as appellee would have us do, would create a conflict in the statute because appellee's liability is mandatorily fixed by section 8(a).

Highlands also argues that we should be guided by interpretations of the Industrial Accident Board and the State Board of Insurance which support Highlands' contention. In this respect, these administrative agencies have, over a six-year period, consistently construed section 8 in a manner that would deny appellants' claim. We cannot agree that we are bound by this interpretation. Although these interpretations are entitled to some weight, they are not controlling. If we accepted the Industrial Accident Board's ruling as law, we would destroy the purpose of allowing appellant to appeal decisions of the Industrial Accident Board.

---

1. Section 8a is a separate section, not to be confused with Section 8, paragraph (a).

Highlands has cited several cases from other jurisdictions which it asserts to be persuasive on the question presented here. The statutes involved in these cases all clearly precluded increased payments to one beneficiary upon ineligibility of another. In *Webster v. Rotary Electric Steel Co.,* 321 Mich. 526, 33 N.W.2d 69 (1948) relief was denied because the Michigan statute set the liability of the carrier by the number of recipients of benefits. Under the Michigan statute, when the number of beneficiaries was reduced, so were the total benefits. Likewise, *Industrial Commission of Colorado v. Employers' Liability Assurance Corporation,* 169 Colo. 396, 456 P.2d 739 (1969) is distinguishable based upon the language of the statute. The Colorado statute provided for compensation benefits of 66⅔ percent of the decedent's weekly wage, but the dispute concerned a provision for an additional $3.50 per week for each dependent child. Since the calculation of this additional amount was based on the number of dependent children, the liability for this payment was reduced when one of the children became ineligible. Similarly, *Consolidated Perry Corporation v. Moore,* 145 Ind.App. 139, 249 N.E.2d 524 (1969) is not in point because the liability to each beneficiary was set by the percentage of the decedent's weekly wage that the partial dependent was receiving prior to the decedent's death.

■ *Mohan v. Publicker Industries, Inc.,* 202 Pa.Super. 581, 198 A.2d 326 (1964) cited to us by Highlands, is also inapplicable. In that case the decedent's mother attempted to qualify for workman's compensation benefits when the decedent was survived by minor children. Thus the cases cited by Highlands concern statutes which fixed the carrier's liability by the number of beneficiaries. The Texas statute fixes the carrier's liability at a percentage of the weekly wage, regardless of the number of beneficiaries. Thus, the rationale of these cases is not persuasive.

On the other hand, the approach of the New Jersey Supreme Court in *Blumenfeld v. Rust Craft Greeting Cards, Inc.,* 51 N.J. 1, 236 A.2d 883 (1967) is persuasive. Under the New Jersey statute the benefits were computed by the number of dependents so there was no question that upon remarriage of the widow the total payments made by the carrier would be reduced. However, the carrier claimed that it would continue to pay the same total weekly payment due before remarriage less a portion of the $1,000 lump sum paid to the widow upon remarriage. The court stated that the question of whether the lump sum payment to the widow reduced subsequent weekly payments to the children was not covered by the act. "Neither the wording of the statute nor its history indicates which of these approaches was in the legislative mind. We think it more likely that the Legislature intended the burden of these increases to be borne by the employer. This view is more in keeping with the remedial objective of the compensation law."

Also persuasive is the holding in *Stegner v. City of St. Paul,* 189 Minn. 290, 249 N.W. 189 (1933). The Minnesota statute specifically provided that upon remarriage the widow received one-half of her remaining weekly benefits in a lump sum payment and the other one-half of the weekly benefits were payable to *her* children. The decedent had a daughter by a former marriage and the ex-wife regained custody at the decedent's death. The statute did not specifically provide that the decedent's child would succeed to one-half the widow's weekly benefits upon remarriage. Nevertheless, the court held that it could perceive no reason why the legislature would be more considerate of the widow's children than those of the decedent and awarded the child the benefits formerly paid to the widow.

■ Highlands argues that by holding that the children have a reversionary interest in the widow's benefits, we leave the provisions of § 8(c) without effect. That section expressly grants the widow a reversion in the children's weekly benefits. In §§ 8(b) and (c) the legislature specifically provided for two contingencies concerning termination of beneficiaries. First, upon death of the children, the wife acceded to

their share of the weekly benefits and second, upon remarriage of the widow the weekly benefits payable to her are limited to two years by the lump sum payment. Thus, section 8(c) is not ineffective under our holding. It grants the widow an *immediate* right to the children's share of the weekly benefits upon their ineligibility, while § 8(b) delays the children's receipt of the mother's share of the weekly benefits until two years after remarriage.

Highlands also asserts that *Twin City Fire Insurance Co. v. Cortez,* 576 S.W.2d 786 (Tex.1978) supports its position. In that case the carrier missed some weekly payments and the supreme court allowed the benefits to both the wife and the minor children to be matured and paid in a lump sum. Appellee argues that if the children had a reversionary interest in the widow's benefits, the supreme court would not have let it be cut off by a lump sum award of the widow's expectancy. Thus Highlands asserts that the supreme court held by implication that there is no reversionary interest in children. We cannot agree. The question before us was not presented to the supreme court in *Twin City.* We note, however, that any implication that may be drawn from the *Twin City* case is contrary to Highlands' position. In approving the lump sum award maturing the death benefits, the supreme court made no distinction between the interest of the mother and that of her children. This implies that the interests are the same. Thus, the children have a reversion in the mother's share of the benefits, but that reversion is cut-off as a quid pro quo for the reversion in the children's share of the weekly benefits that the widow surrendered when the children's share was paid in a lump sum.

■ In *Freeman v. Texas Compensation Insurance Co.,* 586 S.W.2d 172 (Tex.Civ.App. —Fort Worth 1979, *writ granted*), the court held that the children had no right to the widow's share of weekly benefits immediately after the lump sum payment. That case considered a different question than the one before us. We agree that the children have no right to the widow's share of the weekly benefits immediately after remarriage because the language of § 8(a) with respect to maximum mandatory payments would be violated. Thus, the children have no right to receive the weekly benefits previously payable to the widow until two years after the lump sum payment is made because such a holding would increase the fixed liability of the carrier contrary to section 8a. Thus *Freeman* is not inconsistent with our holding here.

Accordingly, we reverse the judgment and remand to the trial court with instructions to render judgment for appellants based upon the amount due the children, with interest from the date of accrual at 6% to April 25, 1979, and thereafter at 9%. Additionally, the trial court shall determine the amount of attorneys fees under Tex. Rev.Civ.Stat.Ann. art. 8306, sec. 7d (Vernon Supp.1980).

Reversed and remanded with instructions.

STOREY, J., dissents.

STOREY, Justice, dissenting.

I respectfully dissent.

The majority has concluded that because section 8 of article 8306 affords a widow a reversionary interest in benefits payable to children who have become ineligible, the legislature necessarily intended also to afford the children a reversionary interest in the widow's benefits upon her death or remarriage. This conclusion is reached despite the clear and unequivocal language of the statute to the contrary. It is unreasonable to assume that the failure to provide for a reversion of the widow's benefits resulted from legislative oversight. Rather, it is more logical to assume that the statute, plainly expressed, resulted from the normal legislative process of debate and compromise.

The 1973 amendment to section 8 of article 8306 made important changes in benefits payable to surviving beneficiaries. Prior to amendment, benefits were limited to a fixed period of 360 weeks. Tex.Rev.Civ. Stat.Ann. art. 8306, § 8 (Vernon 1967). The

benefits are now payable for no fixed or limited number of weekly payments but rather the statute now provides for benefits until the widow dies or remarries and the minor children are provided for during their minority, or until age 25 if attending school, or so long as they are dependent. It cannot be assumed that these far reaching changes in benefits were not reached by the making of important concessions by all parties at interest. To now add to these benefits by judicial construction is an invasion of the legislative prerogative. Particularly is this invasion emphasized by the fact that the Industrial Accident Board's administration of the statute has been subjected to six years of legislative overview. If the Board's refusal to recognize the reversionary interest during this period is incorrect, the legislature has had ample opportunity to correct it by amending the statute.

The rule of construction that the inclusion of the specific limitation excludes all others is a sound one and should be applied here. It is also a well settled rule of construction that interpretation by implication is permitted only to supply an obvious intent not expressly stated, but never to contradict or add to a statute. *Massachusetts v. United North & South Development Co.*, 140 Tex. 417, 168 S.W.2d 226 (1942). Furthermore, subsections (b) and (c) are specific provisions, and it is fundamental that a general provision of a statute must yield to a succeeding specific provision. *Twin City v. Cortez*, 576 S.W.2d 786, 793 (Tex.1978) (dissenting opinion).

The well reasoned opinion of the majority does not reach an unjust result, but if the legislature intended a reversion of the widow's benefits upon death or remarriage, it should amend the statute. I do not believe we should do so by judicial construction. I would affirm the trial court's judgment.