Margaret CAMPBELL, Individually
and as Executrix of the Estate of
Danny W. Campbell, Appellant,

v.

MacGREGOR MEDICAL ASSOCIATION,
Appellee.

No. 01–94–01277–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

April 24, 1997.

Rehearing Overruled June 20, 1997.

Paul S. Jacobs, Kevin Dubose, John L. Barnes, Houston, for Appellant.

Kent H. Twining, John B. Wallace, L. Boyd Smith, Jr., Houston, for Appellee.

Before SCHNEIDER,* C.J., and TAFT and O'CONNOR, JJ.

## OPINION ON REHEARING

TAFT, Justice.

We grant appellee's motion for rehearing, withdraw our opinion of December 14, 1995, and issue this opinion in its stead.

In this appeal, we decide whether the absolute two-year statute of limitations set out in the Texas Medical Liability and Insurance Improvement Act ("article 4590i") bars appellant's, Margaret Campbell's, claims for common-law negligence and gross negligence, deceptive trade practices, breach of warranty and breach of contract against appellee, the MacGregor Medical Association ("MacGregor"), a professional association duly licensed to do business in the State of Texas as physicians. To answer this question, we must first decide whether a professional association falls within the definition of health care provider in article 4590i, section 1.03(a)(3). This determination will then allow us to decide two further issues: (1) whether the article 4590i statute of limitations bars a negligence claim when the injury was known within two years of its occurrence, but the substandard care was not discovered, and (2) whether article 4590i bars DTPA and contractual claims against MacGregor that are not based on negligence. We affirm in part, reverse in part, and remand.

## I. Summary of Facts

On April 26, 1988, Danny Campbell drank some Kool–Aid contaminated with formaldehyde. He instantaneously started vomiting and felt intense pain and a burning sensation in his stomach and throat. His wife, Margaret, picked him up from work and took him

---

* The Honorable Alice Oliver–Parrot, former Chief Justice, Court of Appeals, First District of Texas at Houston, who sat and participated in the original opinion, has resigned.

to the MacGregor Medical Clinic, where they told the clinic personnel that Danny had been poisoned.

After about 45 minutes, he was seen by an internist, Dr. Arnold Berlin. The Kool–Aid was tested and found to contain formaldehyde. Dr. Berlin concluded that Danny had ingested formaldehyde, but assumed he had vomited all of it out of his system. Dr. Berlin did not pump Danny's stomach, order a test to determine the level of formaldehyde in the blood, or treat him with activated charcoal. He did not call poison control or refer Danny to an emergency room. Dr. Berlin treated Danny with Maalox, advised him to continue to take Maalox if he experienced pain, and told him everything would be okay.

Over the next eight months, Danny's condition deteriorated. Swallowing was painful, his stomach hurt whenever he ate, and he suffered intermittent episodes of vomiting. The stomach pain continued after he switched to a bland diet, and when the pain became virtually continuous, he consulted another doctor. On March 22, 1989, Danny had major surgery on his stomach. Around that time, several doctors suggested that his stomach problems may have been avoided if his stomach had been pumped or he had been fed active charcoal when he originally ingested the formaldehyde.

In July 1989, a portion of Danny's stomach was removed. The remainder was removed in August 1989. On December 28, 1990, Danny died.

## II. Procedural History

MacGregor filed a motion for summary judgment on December 28, 1991, approximately a year after Campbell filed suit against it. The motion was denied on August 18, 1993. Campbell's tenth amended original petition was filed February 7, 1994. MacGregor filed a second motion for summary judgment on April 20, 1994.

After soliciting and receiving letters from both parties in late August concerning the issue of whether article 4590i applied, the court granted the second motion on September 2, 1994, without specifying any grounds in the order. On October 27, 1994, the court signed an order dismissing the intervention filed by Danny's former employer and an order of nonsuit of Dr. Berlin.

## III. Rules of Statutory Construction

Campbell's first point of error claims that the trial court erroneously applied the article 4590i statute of limitations in granting summary judgment to MacGregor on Campbell's negligence claims. The parties disagree as to the proper interpretation of key statutory language.

### A. General Rules

Construction of a statute is a matter of law, not fact. *Johnson v. City of Fort Worth,* 774 S.W.2d 653, 655 (Tex.1989). It is incumbent upon the court to ascertain and advance legislative intent, liberally construing statutes to achieve their purposes and promote justice. TEX.GOV'T CODE ANN. §§ 312.005, 312.006 (Vernon 1988). The duty of the court is to construe a statute as written and ascertain the legislature's intent from the language of the act. *Morrison v. Chan,* 699 S.W.2d 205, 208 (Tex.1985).

When the language of a statute is unambiguous, it is given effect according to its terms. *Maley v. 7111 Southwest Freeway, Inc.,* 843 S.W.2d 229, 231 (Tex.App.—Houston [14th Dist.] 1992, writ denied). In *Maley,* the court noted that an express listing of certain persons, things, consequences, or classes is equivalent to an express exclusion of all others. 843 S.W.2d at 231. *See also State v. Mauritz–Wells Co.,* 141 Tex. 634, 175 S.W.2d 238, 241 (1943) (describing this maxim as a "well-settled rule"); *Ex parte McIver,* 586 S.W.2d 851, 856 (Tex. Crim.App.1979); *Texas Real Estate Comm'n v. Century 21,* 598 S.W.2d 920, 922 (Tex.Civ. App.—El Paso 1980, writ ref'd n.r.e.). Campbell argues that the precept *expressio unius est exclusio alterius* (expression of one is exclusion of others) requires a reading that excludes MacGregor from the definition of health care provider.

In *State v. Stone,* the court warned, "the maxim expressio unius est exclusio alterius is a mere rule of construction and will

not be applied when its application would thwart legislative intent made apparent by the entire statute." 271 S.W.2d 741, 750 (Tex.Civ.App.—Beaumont 1954, no writ). In determining legislative intent, the court must look to the entire statute, not just to one clause or section. *Barr v. Bernhard,* 562 S.W.2d 844, 849 (Tex.1978). Moreover, should an otherwise clear statutory provision become ambiguous when placed in context of the remainder of the statute, a court must look beyond the words in order to discern the true legislative purpose. *Bridgestone/Firestone, Inc. v. Glyn–Jones,* 878 S.W.2d 132, 133 (Tex.1994).

Because tension often exists between the seemingly "plain" meaning of a statute and legislative intent, cases involving statutory construction as a critical element often inspire strong dissents, whether the majority strictly construes the meaning or applies a liberal interpretation. For example, in *Blankenship v. Highlands Insurance Co.,* where the statute expressly allowed payment of a deceased child's share of insurance benefits to the mother but was silent as to what befell the mother's share if she died, the majority read into the statute an intent by the legislature to permit payment of the mother's benefit to the children. 594 S.W.2d 147 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.). In reaching this result, the court reasoned in part:

> In statutory construction, the maxim of expressio unius est exclusio alterius is not of legal origin but is a product of logic and common sense and requires great caution in its application. [W]here an expanded interpretation will ... serve the purpose for which the statute was enacted, ... the maxim will be refuted and an expanded meaning given.

*Id.* at 150. The dissent countered by pointing out that the majority reached its conclusion despite the clear and unequivocal language of the statute, and that to add such benefits was an invasion of legislative prerogative. *Id.* at 152–53.

1. Amici supporting MacGregor's interpretation of the statute include Arlington Surgical Association, P.A., Austin Diagnostic Clinic, P.A., Austin

## B. Definition of Health Care Provider

■ The limitations provision of article 4590i states that no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort. TEX.REV.CIV.STAT.ANN. art. 4590i, § 10.01 (Vernon Supp.1997). These claims can only be brought against "a health care provider or physicians." *Id.* § 1.03(a)(4). MacGregor is not a physician, because a physician is defined as "a person" licensed to practice medicine in this state, and MacGregor is not a person. *Id.* § 1.03(a)(8). MacGregor, however, claims that it is a health care provider, which article 4590i defines as

> any person, partnership, *professional association,* corporation, facility, or institution duly licensed or chartered by the State of Texas to provide health care *as a* registered nurse, hospital, dentist, podiatrist, pharmacist, or nursing home, or an officer, employee, or agent thereof acting in the course and scope of his employment.

*Id.* § 1.03(a)(3)(emphasis added).

Campbell, asserting *expressio unius est exclusio alterius,* argues that the statutory language clearly excludes MacGregor from the definition of a health care provider. She claims that unless an entity provides health care in a capacity listed in section 1.03(a)(3), it is not a health care provider as a matter of law. She cites *J.K. & Susie L. Wadley Research Inst. & Blood Bank v. Beeson,* 835 S.W.2d 689 (Tex.App.—Dallas 1992, writ denied) (a blood bank is not a health care provider), and *Townsend v. Catalina Ambulance Co.,* 857 S.W.2d 791 (Tex.App.—Corpus Christi 1993, no writ) (an ambulance company is not a health care provider), to support this argument. *See also Lenhard v. Butler,* 745 S.W.2d 101, 104 (Tex.App.—Fort Worth 1988, writ denied) (a psychologist is not a health care provider). Although this argument is compelling when section 1.03(a)(3) is read in isolation, we must look at the entire statute. *Barr,* 562 S.W.2d at 849.

Two helpful amicus briefs were filed in this case.[1] Amici curiae contend that article

Regional Clinic, P.A., Bone and Joint Clinic of Houston, P.A., Cardiothoracic Surgery Associates of North Texas, P.A., W.B. Carrell Memorial

4590i, section 15.01 directly contradicts appellant's interpretation of section 1.03(a)(3). Section 15.01 forbids a "physician, professional association of physicians, or other health care provider" from requesting or requiring arbitration of health care liability claims unless they give the standardized written notice required by the statute. TEX. REV.CIV.STAT.ANN. art. 4590i, § 15.01(a) (Vernon Supp.1997). We are persuaded that the legislature would not have addressed professional associations of physicians in this section were an article 4590i claim against physicians' associations an impossibility. The contradiction between sections 15.01 and 1.03(a)(3) makes the statute ambiguous; therefore, we must seek guidance from the rest of article 4590i. *Glyn–Jones*, 878 S.W.2d at 133.

Article 4590i is a unique statute in that the legislative intent is expressly stated in section 1.02. Section 1.02 announces that the legislature created article 4590i in response to a medical malpractice insurance crisis. *Id.* § 1.02(a)(5). The statute cites rising numbers of health care liability claims and the related increase in money paid out by insurers as causing a serious public problem in availability and affordability of proper treatment and adequate medical professional liability insurance. *Id.* §§ 1.02(a)(1)-(11). The statute also expresses an intent to alleviate these concerns by reducing excessive frequency and severity of health care liability claims, assuring awards that are rationally related to actual damages, and doing so without restricting a claimant's right any more than is necessary to deal with the crisis. *Id.* §§ 1.02(b)(1)-(3). Finally, the law aims at making affordable health care more accessible and available to citizens of Texas and to protect physicians, hospitals, and other health care providers by lowering insurance rates. *Id.* §§ 1.02(b)(4),(5). We agree with MacGregor that excluding professional associations of physicians would severely limit the attainment of these goals and contravene the legislative intent.

Still, Campbell argues that section 1.03(a)(3)'s plain language does not extend to physicians' associations, whose only relief is to seek a statutory amendment. At the time article 4590i was enacted, however, it appears that only physicians were forming professional associations. *See* Op.Tex. Att'y Gen. No. M–1185 (1972); Op.Tex. Att'y Gen. No. M–551 (1970); Robert W. Hamilton, *Professional Corporation Acts*, 24 Sw. L.J. 91, 96 (1970); J. Leon Lebowitz, *Annual Survey of Texas Law: Professional associations*, 26 Sw. L.J. 86, 87 (1972); Charles W. Hall et al., *Professional Incorporation in Texas*, 48 Texas L.Rev. 84, 96 (1969). It follows that inclusion of the term "professional association" in section 1.03(a)(3) was meant to include professional associations of physicians.

We cannot deny that Campbell's reliance on the plain language of 1.03(a)(3) is persuasive, but strong evidence indicates that the legislature intended a broader reading. While we acknowledge the question before us is a difficult one, we hold that the legislature intended to include professional associations providing health care as physicians in its list of health care providers.

## IV. Summary Judgment

Having decided that article 4590i applies, we now review the trial court's summary judgment ruling.

### A. Standard of Review

Rule 166a(c) entitles a movant to summary judgment if there is no genuine issue as to

Clinic, P.A., Central Texas Medical Foundation, Dallas Nephrology, P.A., Dallas Diagnostic Association, P.A., Dallas Emergency Associates, P.A., East Texas Anesthesia Associates, P.A., The Fort Worth Clinic, P.A., Fort Worth Urology Clinic, P.A., Greater Houston Anesthesiology, P.A., Hillcrest Family Health Care Centers, P.A., Houston Cardiovascular Associates, P.A., Kelsey Seybold Medical Group, P.A., Medical Imaging of Dallas, P.A., Medical and Surgical Clinic of Irving, P.A., Neurological Clinic, P.A., North Texas Colon and Rectal Associates, P.A., Obstetrical and Gynecological Associates, P.A., Orthopedic Clinic, P.A., Radiology Associates, P.A., Radiology Associates of Tarrant County, P.A., John Ratcliff, c/o Heart Place, P.A., Respiratory Consultants of Houston, P.A., Shannon Clinic, P.A., St. Joseph's Radiology, P.A., San Benito Medical Association, P.A., South Texas Medical Clinics, P.A., Surgical Associates of the Mid–Cities, P.A., Surgical Associates of Texas, P.A., Surgical Oncology Associates, P.A., Texas Medical Association, Trinity Clinic, P.A., University Pediatric Association, P.A., and Victoria Radiology Associates, P.A.

any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer. TEX.R.CIV.P. 166a(c). The standards for reviewing a summary judgment are well settled: (1) the movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

If the defendant is the movant, a summary judgment in its favor is proper only if, as a matter of law, the plaintiff could not succeed upon any of the theories pleaded. *Havens v. Tomball Community Hosp.*, 793 S.W.2d 690, 691 (Tex.App.—Houston [1st Dist.] 1990, writ denied).

### B. Negligence Claim

MacGregor contends that Campbell's negligence claim is barred by the section 10.01 statute of limitations. *See* TEX.REV.CIV.STAT. ANN. art. 4590i, § 10.01 (Vernon Supp.1997). Campbell responds that a discrepancy between her deposition testimony and her affidavit raises a question of fact as to when she discovered Dr. Berlin's misdiagnosis and that later discovery would toll the statute.

The statute of limitations in section 10.01 is absolute. *See Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex.1985). The limitations period runs "two years from the occurrence of the breach or tort." TEX.REV. CIV.STAT.ANN. art. 4590i, § 10.01. (Vernon 1997). Campbell attempts to toll the statute by invoking the "open courts" doctrine. Under the Texas Constitution the legislature has no power to make a remedy by due course of law contingent on an impossible condition. *Nelson v. Krusen*, 678 S.W.2d 918, 921 (Tex.1984). However, Campbell's reliance on the open courts doctrine is misplaced. Cases using the doctrine to toll the statute of limitations involve situations

wherein discovery of the injury within the two-year period was impossible. *See Nelson*, 678 S.W.2d at 921–23; *Neagle v. Nelson*, 685 S.W.2d 11, 12 (Tex.1985). When, however, claimant discovers the injury and there is still reasonable time to sue, the open courts doctrine will not toll the statute. *Morrison*, 699 S.W.2d at 207. Even accepting the truth of Margaret Campbell's most favorable testimony, that no doctor told her about Dr. Berlin's substandard care, she knew of the injury well within the statute of limitations, and her claim is barred.

Because Campbell could not prevail as a matter of law, we overrule Campbell's first point of error and affirm the trial court's summary judgment on the negligence claim in favor of MacGregor.

### C. DTPA Claim

Campbell's second point of error complains that the trial court erred in granting summary judgment on her Deceptive Trade Practices Act ("DTPA") cause of action for misrepresentation. TEX.BUS. & COM.CODE ANN. § 17.41 (Vernon 1987). She alleges specifically that MacGregor promised emergency treatment, did not disclose that it had no emergency facilities or emergency physicians, and did not disclose that emergency referrals to other hospitals would cause expenses not covered by PruCare. She further alleges that MacGregor's conduct was unconscionable, thus forbidden by DTPA section 17.50(a)(3). *See* TEX.BUS. & COM.CODE ANN. § 17.50(a)(3) (Vernon 1987). MacGregor argues in response that because professional associations of physicians are covered by article 4590i, section 12.01(a) bars the DTPA claim. Section 12.01(a) states:

> Notwithstanding any other law, no provision of Section 17.41–17.63, Business & Commerce Code [the DTPA], shall apply to physicians or health care providers as defined in Section 1.03(3) of this Act, with respect to claims for damages for personal injury or death resulting, or alleged to have resulted, from negligence on the part of any physician or health care provider.

TEX.REV.CIV.STAT.ANN. art. 4590i, § 12.01 (Vernon Supp.1997).

In *Sorokolit v. Rhodes*, a plastic surgeon instructed a client and her husband to select a picture of a nude model from a magazine, promising that, following surgery, her breasts would look like those in the picture she selected. 889 S.W.2d 239, 240 (Tex. 1994). When the result was not as guaranteed, she sued the doctor in negligence and DTPA misrepresentation and warranty claims. *Id.* The Texas Supreme Court held that article 4590i section 12.01(a) only bars DTPA claims based on negligence, but does not preclude DTPA suits based on knowing misrepresentation or breach of express warranty. *Id.* at 243.

 It is true that a plaintiff cannot recast negligence claims against a physician or health care provider into DTPA, warranty, or contract claims in order to avoid article 4590i. *See Sorokolit,* 889 S.W.2d at 242; *Waters v. Del–Ky, Inc.,* 844 S.W.2d 250, 258–59 (Tex.App.—Dallas 1992, no writ). However, Campbell does not allege that MacGregor deviated from the accepted standard of care; rather, she claims it knowingly misled the decedent. We hold that because Campbell's claim, which bears great similarity to those in *Sorokolit,* does not involve the breach of a standard of care, it is not based on negligence and not barred by the statute. *Sorokolit,* 889 S.W.2d at 243. Therefore, we sustain Campbell's second point of error.

## D. Breach of Warranty and Breach of Contract Claims

Campbell's third point of error claims that the trial court improperly granted summary judgment on her breach of contract and breach of warranty claims. Without citing any authority to support its position, MacGregor stated in its motion for summary judgment that the breach of warranty and breach of contract claims cannot be the proximate cause of Danny Campbell's death as a matter of law. MacGregor claimed the un-

derlying action was for negligence and article 4590i bars medical negligence claims masquerading as contract actions.

 Because we have established that the section 10.01 statute of limitations applies to MacGregor, health care liability claims are barred. However, health care liability claims only involve departures from "accepted standards of medical care." TEX.REV.CIV.STAT. ANN. art. art 4590i, § 1.03(a)(4) (Vernon Supp.1997). Although MacGregor made such standardized promises as the provision of "medical services of good quality and in accordance with accepted medical and surgical practices," Campbell alleges that such promises as "effective emergency room care" created a particularized obligation that MacGregor did not meet. Following the logic of *Sorokolit,* Campbell's breach of warranty and breach of contract claims are distinguishable from negligence claims. They are not barred by section 10.01.[2]

We hold that the trial court erred in awarding summary judgment in favor of MacGregor on the breach of contract and breach of warranty claims. Accordingly, we sustain Campbell's third point of error.

## V. Conclusion

We affirm the summary judgment on the negligence claim. We reverse the summary judgment as to the misrepresentation, breach of contract, and breach of warranty claims and remand the case for further proceedings.

O'CONNOR, J., dissents in part and concurs in part.

Appellee moved for rehearing en banc.

SCHNEIDER, C.J., and COHEN, MIRABAL, WILSON, HEDGES, ANDELL, TAFT and NUCHIA, JJ., voted against rehearing on banc.

O'CONNOR, J., voted for rehearing en banc.

---

2. In his dissenting opinion in *Sorokolit,* Justice Cornyn asserts that the same legislative intent we have found persuasive on Campbell's first point of error also limits DTPA, breach of contract, and breach of warranty claims. *Sorokolit,* 889 S.W.2d at 243–46 (Cornyn, J., dissenting). Although we agree that the availability of these latter claims undercuts the legislative intent, we are bound by the *Sorokolit* majority opinion as to Campbell's second and third points of error because the claims are so similar. *See id.* at 242–43. We acknowledge some tension between our resolution of this case and the majority opinion in *Sorokolit.* However, the critical distinction we see is the additional evidence of legislative intent we have relied on from section 15.01.

O'CONNOR, Justice, dissenting from and concurring to opinion on rehearing.

I disagree with the majority's interpretation of TEX.REV.CIV.STAT. art. 4590i, § 1.03(a)(3). I dissent from part III(B) and part IV(B) of the majority's opinion; I concur in the rest of the opinion.

A claim against a physician or a "health care provider" must be filed within two years from the occurrence of the breach or tort. Article 4590i, § 1.03(a)(3) defines a health care provider as

> any person, partnership, professional association, corporation, facility, or institution duly *licensed or chartered* by the State of Texas to provide health care *as a* registered nurse, hospital, dentist, podiatrist, pharmacist, or nursing home, or an officer, employee, or agent thereof acting in the course and scope of his employment.

*Id.* (emphasis added). To shorten the definition, a health care provider is a person or entity who is *licensed or chartered* in Texas *as a:* (1) a registered nurse, (2) hospital, (3) dentist, (4) podiatrist, (5) pharmacist, or (6) nursing home, or (7) an officer, employee, or agent thereof.

The majority's position is that the legislature meant to say "such as" instead of "as a." I confess I do not know what the legislature intended; I only know what the statute says. As an appellate court, we cannot re-write the statute to correct what we think is a legislative mistake.

The majority compares section 103(a)(3) to another section (not at issue in this case) and decides they conflict. The majority uses the conflict to justify its finding that the statute is ambiguous. The majority then says the ambiguity compels it "to seek guidance from the rest of article 4590i." From that vantage point, the majority re-writes the statute to satisfy its understanding of the legislature's intent.

The legislature is presently in session. If the legislature meant to say "such as" instead of "as a," the mistake can be corrected quickly. Until then, I would hold that § 1.03(a)(3) does not include an association of physicians in the definition of "health care provider," as we did in our original opinion.