Philip S. **MALEY**, et al., Appellants,

v.

**7111 SOUTHWEST FREEWAY, INC. d/b/a Louis Delhomme Marine,** Appellee.

No. B14–92–00203–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 3, 1992.

Rehearing Denied Jan. 14, 1993.

Michael C. O'Connor, Houston, for appellants.

C. Ed Harrell, Houston, for appellee.

Before MURPHY, CANNON and MORSE (Sitting by Designation), JJ.

## OPINION

CANNON, Justice.

This is an appeal of a summary judgment. Maley and five others (collectively "the Boaters") each bought a boat on credit from Louis Delhomme Marine ("Delhomme"). The Boaters sued Delhomme alleging that Delhomme charged a documentary fee that was illegal under the Texas Consumer Credit Code. The Boaters and Delhomme each moved for summary judgment. The trial court granted Delhomme's motion. The Boaters appeal. We reverse.

The facts are undisputed. During 1989 and 1990, each of the Boaters bought a boat, motor, and trailer from Delhomme. The purchases were financed by retail installment contracts ("the Contracts") signed by each of the Boaters payable to Delhomme in monthly installments. The Boaters and Delhomme contracted for the payment to Delhomme of a twenty to twenty-five dollar documentary fee to cover the preparation, handling, and processing of documents related to closing the Contracts. This documentary fee is distinct from the licensing, registration, and certificate of title fees paid to the State by the seller on behalf of the buyer. The Boaters sued Delhomme under the Retail Installment Sales chapter of what is commonly referred to as the Texas Consumer Credit Code. TEX.REV.CIV.STAT.ANN. art. 5069–6.01 et seq. (Vernon 1987 & Supp.1992). The Boaters alleged that the documentary fee charged by Delhomme was illegal under the Documentary Fee provision. *Id.* art. 5069–6.10. Both sides moved for summary judgment. Holding that Article 6.10 permitted Delhomme's documentary fee, the trial court

rendered a summary judgment that the Boaters take nothing.

In our review of the granting of a summary judgment, the movant has the burden to show that there are no genuine issues of material fact and he is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Here, the parties agree on the facts. They also agree on the law to the extent that the transactions at issue are governed by Chapter Six of the Texas Consumer Credit Code. TEX.REV.CIV.STAT.ANN. art. 5069–6.01 et seq. (Vernon 1987 & Supp. 1992). The parties disagree, however, on the statutory construction of Article 6.10, the Documentary Fee provision. This single question of law is at the heart of the dispute.

■■■ Several general principles guide our statutory construction effort. First, we diligently attempt to ascertain and advance the legislative intent. TEX.GOV'T CODE ANN. § 312.005 (Vernon 1988). Second, we liberally construe the Revised Statutes to achieve their purposes and promote justice. *Id.* § 312.006. Third, where the language of a statute is unambiguous, we give effect to the statute according to its terms. *Mathews Constr. Co. v. Jasper Housing Constr. Co.*, 528 S.W.2d 323, 326 (Tex.Civ.App.—Beaumont 1975, writ ref'd n.r.e.). Fourth, we will not adopt a construction that would render a law or provision absurd or meaningless. *City of Deer Park v. State ex rel. Shell Oil Co.*, 259 S.W.2d 284, 287 (Tex.Civ.App.—Waco 1953), *aff'd*, 154 Tex. 174, 275 S.W.2d 77 (1954). Fifth, an express listing of certain persons, things, consequences, or classes is equivalent to an express exclusion of all others. *Lenhard v. Butler*, 745 S.W.2d 101, 105 (Tex.App.—Fort Worth 1988, writ denied); *see McCalla v. State Farm Mut. Auto Ins. Co.*, 704 S.W.2d 518, 519 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

The Boaters interpret Article 6.10 as prohibiting Delhomme from contracting for or charging a documentary fee. In pertinent part that article reads:

A seller *may* charge a documentary fee for services rendered to, for, or on behalf of a retail buyer in preparing, handling, and processing documents relating to, and closing a retail installment transaction involving, a *motorcycle, a motor-driven cycle, moped, or all-terrain vehicle.*

TEX.REV.CIV.STAT.ANN. art. 5069–6.10(a) (Vernon 1987) (emphasis added).

■■ The Boaters maintain that this provision authorizes a documentary fee *only* in connection with "a retail installment transaction involving, a motorcycle, a motor-driven cycle, moped, or all-terrain vehicle." They argue that a construction that would permit documentary fees for credit sales of boats would necessarily permit fees across the entire spectrum of goods and services sold through retail installment contracts, rendering the provision meaningless. We agree. Article 6.10, captioned "Documentary Fee," lists four types of transactions where a documentary fee may be included in a retail installment contract. The language is plain, the list excludes all other goods and services, and there are no words such as "including" or "etc." to open the door for us to expand the list.

We find corroboration for this construction in other sections of the Consumer Credit Code. Article 6.01(k) defines "principal balance" as "the cash price of the goods ... plus the amounts, if any, included ... for itemized charges, including *a documentary fee under Article 6.10....*" *Id.* art. 5069–6.01(k) (emphasis added). This specific reference to Article 6.10 indicates that the only legitimate documentary fee is one authorized by Article 6.10, i.e., for the motorized vehicle transactions there listed. In addition, other provisions of Chapter Six use "may" authorizing language to limit the type of delinquency fees, attorney fees, and insurance-related charges that can be included in retail installment contracts. *Id.* arts. 5069–6.02(11) and 6.04(2). Also, Article 8.01(a) imposes penalties on sellers who contract for, charge, or receive, "charges greater than the amount *authorized* by this Subtitle." *Id.* arts. 5069–8.01(a) (emphasis added).

These excerpts demonstrate that the use of "may" language to authorize certain activities and exclude others is not unique to the documentary fee provision.

A comparison of the Chapter Seven documentary fee provision with that of Chapter Six provides further corroboration. Chapter Seven of the Consumer Credit Code applies to Vehicle Installment Sales (motor vehicles). *Id.* art. 7.01 et seq. Its documentary fee provision, Article 7.01(h–1), was enacted in 1979; the Chapter Six provision, Article 6.10, in 1985. The Chapter Six provision is nearly a verbatim copy of the Chapter Seven provision, with one significant exception. The Chapter Seven provision, by its terms, applies to all installment sales covered by that chapter, i.e., all motor vehicle credit sales. On the other hand, the Chapter Six provision, by its terms, does not apply to all retail installment sales covered by Chapter Six, but only to those involving motorcycles, motor-driven cycles, mopeds, and all-terrain vehicles. We presume that the legislature was aware of the all-inclusive nature of the Chapter Seven language when it enacted the narrowly-tailored Chapter Six version. *Compare Id.* arts. 5069–7.01(h–1) and 5069–6.10.

Delhomme's counter-arguments are unpersuasive. Delhomme points to the Manufactured Homes chapter of the Consumer Credit Code containing a provision expressly prohibiting documentary fees and to other chapters which prohibit charges in excess of those authorized. *Id.* arts. 5069–3.15(8), 4.01(7), 5.02(7), and 6A.03(8). Delhomme argues that these provisions show that, when the legislature intended to prohibit a documentary fee, it did so expressly. However, unlike any of these other chapters, Chapter Six has its separate, dedicated provision specifically addressing documentary fees and limiting them to enumerated cases.

▮ Delhomme maintains that we cannot consider legislative intent since the Boaters offered no summary judgment proof thereon. But statutory construction is a question of law, and we are obliged by the Government Code to attempt to discern and give effect to the legislature's intent. TEX. GOV'T CODE ANN. § 312.005 (Vernon 1988).

Delhomme's cites *Ford Motor Credit Co. v. Brown,* 617 S.W.2d 271, 273 (Tex.App.—Eastland 1980, writ ref'd n.r.e.), for the proposition that documentary fees may be included in the sales price of a cash or credit sale of a boat. However, that case involved a motor vehicle installment sale governed by Chapter Seven. Chapter Six was not implicated.

Delhomme also points out that Article 6.05, the Prohibitions section, does not bar documentary fees. But this section deals with general business practices, not specific fees. Besides, none of the other Consumer Credit Code chapters that do bar documentary fees do so in their corresponding Prohibitions sections.

We come now to Delhomme's best argument. Delhomme correctly asserts that boats have similar registration, licensing, and titling requirements as do motorized road vehicles and that the documentation handling tasks are comparable. It would not have been unreasonable for the legislature to have included boats in the list of goods for which documentary fees could be charged. But the fact remains that the legislature did not do so. On the other hand, in Article 6.04(2), the legislature did address marine-unique insurance requirements indicating that the legislature was aware of boating industry interests. *See* TEX.REV.CIV.STAT.ANN. art. 5069–6.04(2) (Vernon 1987).

We believe that the legislature's restrictive approach to documentary fees relates to the broad sweep of Chapter Six. This Retail Installment Sales chapter includes most goods and services in the State. Arguably, this is the chapter of the Credit Code most impacting those whom the legislature intended to protect.

> These unregulated (abusive and deceptive) practices bring great social and economic hardship ... impose intolerable burdens on those segments of society which can least afford to bear them—the uneducated, the unsophisticated, the poor and the elderly....

These facts conclusively indicate a need for a comprehensive code of legislation to ... classify and regulate loans and lenders, to regulate credit sales and services, and place *limits on charges* imposed in connection with such sales and services....

TEX.REV.CIV.STAT.ANN. title 79, Declaration of Legislative Intent (Vernon 1987) (emphasis added).

Retail installment sales include such items as furniture, home appliances, home entertainment equipment, etc., items historically subject to credit abuse. We find it reasonable that the legislature would take a restrictive approach to documentary fees, generally disfavoring them, but authorizing fees in those instances where it considered the threat to the protected consumer class to be minimal or tolerable. As unobjectionable as a documentary fee for boat credit sales might be, the tradeoff is one for the legislature, especially so when the statutory language gives the courts little room for maneuver.

The legislative history supports our statutory construction. In 1979 the Texas Legislature passed Senate Bill 359 which added the Documentary Fee provision to Chapter Seven of the Consumer Credit Code (Vehicle Installment Sales). Acts 1979, 66th Leg., p. 1016, ch. 450, § 1 (current version at TEX.REV.CIV.STAT.ANN. art. 5069–7.01(h–1) (Vernon Supp.1992)). In 1985 the Legislature passed House Bill 1281 which added a very similar Documentary Fee provision to Chapter Six (Retail Installment Sales). Acts 1985, 69th Leg., ch. 897, § 2 (current version at art. 5069–6.10 (Vernon 1987)).

The Chapter Seven Documentary Fee provision was extensively debated and was later the model for the Chapter Six provision. According to Senator Creighton, the Senate Bill 359 sponsor, and Gene Fondren, representing the Texas Automobile Dealers Association ("TADA"), the primary purpose of adding Article 7.01(h–1) was to permit car dealers to include a documentary fee in installment contracts. Public Hearing of Tex. S.B. 359 Before the House Comm. on Business and Commerce, 66th Leg. (April 17, 1979) (statement of Gene Fondren, representing TADA) (audio tapes available from the Office of the House Committee Coordinator). Commissioner Kelly of the Texas Consumer Credit Commission had taken the position that no charge could be included in the principal balance of a motor vehicle installment contract unless it was specifically permitted by Chapter Seven of the Consumer Credit Code. *Id.* In practice, dealers simply included the documentary fee in the base sales price which was transferred to the installment contract. That is, the documentary fee was hidden in the base sales price, not disclosed or itemized in the installment contract. *Id.* However, a Fifth Circuit case established that federal truth in lending law prohibited including a documentary fee in an installment contract without full disclosure. *Id.; see Meyers v. Clearview Dodge Sales,* 539 F.2d 511 (5th Cir.1976), *cert. denied,* 431 U.S. 929, 97 S.Ct. 2633, 53 L.Ed.2d 245 (1977). Prohibited by federal law from lumping the documentary fee into the base sales price and unable to include the fee as an itemized charge under state law, the car dealers sought legislative relief. TADA successfully advocated the passage of Senate Bill 359 which permitted car dealers to include an itemized documentary fee in the principal balance under motor vehicle installment sales contracts. *Id.*

In 1985 Representative Wallace, the sponsor of House Bill 1281, and Jimmy Hill, representing the Texas Motorcycle Dealers Association ("TMDA"), maintained that House Bill 1281 was intended to accomplish for the motorcycle dealers what Senate Bill 359 had achieved for the automobile dealers. Public Hearing on Tex. H.B. 1281 Before the House Comm. on Business and Commerce, 69th Leg. (March 25, 1985) (statement by Jimmy Hill, representing TMDA) (audio tapes available from the Office of the House Committee Coordinator). There was little debate. The Bill amended Chapter Six, Retail Installment Sales, to permit a documentary fee to be included in the principal balance under retail installment contracts for the sale of motorcycles, motor-driven cycles, mopeds, and off-terrain vehicles.

The legislative history informs us that, in enacting Article 6.10 and 7.01(h–1), the legislature intended to make limited exceptions to what the Texas Credit Commission viewed as a general ban on the inclusion of documentary fees in installment contracts.

Our construction is consistent with Texas Supreme Court guidance. *Gonzales v. Gainan's Chevrolet City*, 690 S.W.2d 885 (Tex.1985), held that courts may no longer presume the legality of terms and provisions of a contract required or prohibited by the Consumer Credit Code except in connection with usury claims. *Id.* at 887. *Gonzales* reaffirmed the principle that courts should construe the Credit Code in a manner that comports with the legislative intent and furthers the purposes of the statute. *Id.; see also Ford Motor Credit Co. v. Blocker*, 558 S.W.2d 493, 498 (Tex. Civ.App.—El Paso 1977, writ ref'd n.r.e.) (imposing a strict duty on sellers and creditors to see that contracts comply with statutory requirements and prohibitions).

■ In summary, we hold that the trial court erred in construing Article 5069–6.10 of the Consumer Credit Code to permit documentary fees to be included in the retail installment contracts for the credit sales of boats, boat motors, and boat trailers. This being the only ground for decision specified in the judgment, we reverse Delhomme's summary judgment. Although Delhomme did not rely solely on its construction of Article 6.10, but also presented waiver, release, and estoppel affirmative defenses against the Boaters' claims, we cannot affirm a summary judgment on any ground not expressly identified in the judgment order. *Delaney v. University of Houston*, 835 S.W.2d 56, 62 (Tex.1992) (Doggett, J., concurring); *S.S. v. State Farm Fire and Casualty Co.*, 808 S.W.2d 668, 672 (Tex.App.—Austin 1991, writ granted). Granting Delhomme's motion for summary judgment on its construction of the documentary fee provision, the trial court did not need to reach Delhomme's affirmative defenses. Also, the Boaters' competing motion for summary judgment must still overcome those defenses. We therefore remand the cause to the trial court to consider Delhomme's defenses and for other actions consistent with this opinion.

Reversed and remanded.