Minnie Evelyn BIAZA and Johnnie Louise Clark, Individually and as Co–Independent Executrixes of the Estate of Minnie M. Kubala, Deceased, Appellants,

v.

Janice Marie SIMON, Ruth Nichol Kubala, Charles Evans, and Bancplus Mortgage Corporation, Appellees.

No. A14–93–00487–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

June 16, 1994.

Rehearing Denied July 28, 1994.

Benjamin F. Walker, San Antonio, for appellants.

Joe H. Rentz, Houston, Mark S. Pfeiffer, Irving, for appellees.

Before MURPHY, ELLIS and LEE, JJ.

## OPINION

ELLIS, Justice.

This appeal concerns a dispute over certain real property claimed by appellants, Minnie Evelyn Biaza and Johnnie Louise Clark, individually and as co-independent executrixes of the estate of Minnie M. Kubala, to be part of the estate of Minnie M. Kubala. Appellants

are the daughters and only heirs of Minnie M. Kubala. Appellants brought this trespass to try title action against appellees, Janice Marie Simon, Ruth Nichol Kubala, Charles Evans, and BancPlus Mortgage Corporation, to recover said property. Both appellants and appellees moved for summary judgment in the trial court. The trial court granted summary judgment in favor of the appellees. We affirm.

In 1984, Minnie M. Kubala and Julius Kubala divorced. The divorce decree, dated December 14, 1984, ordered that the property that is the subject of this suit[1] and certain other property be sold by the court appointed receiver, Robert J. Montgomery, and the proceeds be distributed sixty percent (60%) to Minnie M. Kubala and forty percent (40%) to Julius Kubala. The real property in question is located in the city of Deer Park, Harris County, Texas. Certain personal property was awarded directly to Minnie M. Kubala and Julius Kubala. The decree was issued by the trial judge of the 309th District Court of Harris County. At the time of the divorce, Minnie M. Kubala was non compos mentis and her daughter, Minnie Evelyn Biaza, had been appointed guardian for her mother by the probate court. Biaza was represented by an attorney, J.B. Williamson, and appeared in the divorce action on her mother's behalf. While everyone considered Biaza to be the legal guardian of Minnie M. Kubala, the record reflects that Biaza had failed to post the $4,000.00 bond required by the probate court and was therefore, not her mother's legal guardian. This information, however, was not presented to the trial court presiding over the divorce action at the time the court asked if Biaza agreed to the terms of the decree. The terms of the decree were agreed to by Biaza and Julius Kubala and the court memorialized their agreement in the decree stating: "The Court finds that the parties have agreed and consented to the terms of this Decree." Thus, the judgment rendered in this case was an agreed or con-

sent judgment. The decree was approved as to form and substance and signed by Biaza's attorney, J.B. Williamson.

On January 14, 1985, Biaza, on behalf of her mother, filed a motion for new trial. In that motion, Biaza claimed that the division of personal property was unfair and that a new trial was therefore warranted.[2] On March 22, 1985, the trial court granted the motion for new trial; however, on August 15, 1985, the court set aside its order granting the motion for new trial and ordered that the decree of divorce signed December 14, 1984, be reinstated. The trial court took this action in response to a request by Julius Kubala. The order also recited that all parties received notice and were represented by counsel. There were no further motions filed by either side in the divorce action and thus, the judgment became final. Neither appellants or any other party filed an appeal from the judgment.

On January 19, 1987, before the subject property was sold by Robert J. Montgomery, the court appointed receiver, Minnie M. Kubala, died. Appellants are the daughters and sole heirs of Minnie M. Kubala. Upon their mother's death, they were named co-independent executrixes of her estate and offered Minnie M. Kubala's will for probate. On June 17, 1987, the receiver sold the subject property to Janice Marie Simon, the daughter of Ruth Nichol Kubala who was married to Julius Kubala after his divorce from Minnie M. Kubala.[3] BancPlus Mortgage Corporation holds the purchase money mortgage on the property.

On June 17, 1992, appellants filed this suit against the appellees. Their petition stated that the suit was an action for:

> ... trespass to try title, to remove clouds from title, and for declaratory judgment declaring the hereinafter described real property to be the property of the Estate of Minnie M. Kubala, Deceased and declar-

---

1. All references to "subject property" refers to the real property that is the subject of this appeal.

2. The motion for new trial complained only about the division of **personal property**. It con-

tained no complaint concerning the division of proceeds from the sale of the real property that is the subject of this suit.

3. Charles Evans is the current husband of Ruth Nichol Kubala. It is unclear from the record what happened to Julius Kubala.

ing a purported deed to the Defendant JANICE MARIE SIMON and deed of trust of even date therewith now held by the Defendant BANKPLUS [sic] MORT-GAGE CORP., to be null and void, and for other declaratory relief incidental thereto.

Appellants' contention was that the real property was part of Minnie M. Kubala's estate. They contended that the receiver's deed to Janice Marie Simon and the orders of the 309th District Court in connection with the sale were void. They alleged that the 309th District Court lost jurisdiction in January of 1987 when Minnie M. Kubala died and therefore, the receiver was not entitled to sell the property and the court was without any jurisdiction to approve the sale in June of 1987. Appellees filed a motion for summary judgment alleging that they were entitled to judgment as a matter of law because: (1) appellants' action was an improper collateral attack upon the divorce decree; and/or (2) Biaza, in her capacity as guardian for Minnie M. Kubala, consented to the decree and was therefore estopped to bring suit. Attached to their motion for summary judgment was a copy of the December 14, 1984, divorce decree. Appellants also filed a motion for summary judgment contending that the decree was either void or interlocutory, and in either case, the 309th District Court lost all jurisdiction when Minnie M. Kubala died. Appellants argued that any action taken by the court or its receiver after Minnie M. Kubala's death was void ab initio. Therefore, the sale of the property to Janice Marie Simon was void and the real property is part of the estate.

In its judgment, the trial court found as follows:

1. Plaintiff's [appellants'] action is a collateral attack upon the final Divorce Decree entered in Cause Number 83–34989–309th Family District Court. The court finds that the 309th had jurisdiction to enter the final Divorce Decree, from which no appellate relief was granted.

2. The Divorce Decree is binding upon the Estate of Minnie Mae Kubala, Deceased, and her heirs, including the Plaintiffs [appellants].

3. The court finds that Minnie Biaza, as Guardian of Minnie Kubala agreed to the final Decree and is therefore, estopped to now attack that Decree in this proceeding.

■■■ Appellants bring five points of error alleging the trial court erred in granting appellees' motion for summary judgment and denying their motion.[4] A summary judgment is not entitled to the same deference given a judgment following a trial on the merits. *See Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984). When reviewing a trial court's order granting a motion for summary judgment, an appellate court does not view the evidence in the light most favorable to the verdict; rather, the court must indulge every reasonable inference in favor of the non-movant. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). The issue is not whether the non-movant raised a material fact issue defeating the movant's motion, but whether the movant proved entitlement to judgment as a matter of law. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828–29 (Tex.1970); *see* Tex.R.Civ.P. 166a(c). If the movant fails to meet its burden, the appellate court must reverse and remand the case for further proceedings in the trial court. *Gibbs,* 450 S.W.2d at 828–29.

■■■ Where both parties file motions for summary judgment and one is granted and the other is denied, the denial may be considered by the reviewing court if the appealing party complains of both the granting of the opponent's motion and the denial of its motion. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988). If that is the case, the appellate court should determine all questions presented and may reverse the trial court's judgment and render the judgment the trial court should have rendered, including rendering

4. Points of error one and five are general points alleging that the trial court erred in granting appellees' motion for summary judgment and denying appellants' motion for summary judgment. Points of error two, three, and four make specific complaints concerning the trial court's grounds for granting appellees' motion. Though appellants have listed five specific points of error at the beginning of their brief, their arguments under the points are not divided into points one through five, rather they have a general discussion encompassing all of their points.

judgment for the party whose motion was denied by the trial court. *Id.*

The proper standard for reviewing summary judgment cases has been plainly set forth by the Texas Supreme Court:

1. A movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant must be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubt resolved in its favor.

*Nixon,* 690 S.W.2d at 548–49; *Montgomery,* 669 S.W.2d at 310–11.

Appellants first argue that the trial court erred in granting summary judgment for appellees on the grounds that appellants' suit is a collateral attack on the divorce decree rendered by the 309th District Court on December 14, 1984. The entire case turns on this issue. We must first decide if appellants' action is in fact a collateral attack on the divorce decree. If it is a collateral attack, we must determine whether it is proper. Appellants argue that this is not a collateral attack on the divorce decree, but even if it is, their attack is proper because the judgment is void, i.e., the trial court lacked jurisdiction, or the judgment was never final.

A collateral attack on a judgment is an effort to avoid its binding force in a proceeding instituted not for the purpose of correcting, modifying, or vacating it, but in order to obtain specific relief against which the judgment stands as a bar. *Crawford v. McDonald,* 88 Tex. 626, 33 S.W. 325, 327 (1895); *Texaco, Inc. v. LeFevre,* 610 S.W.2d 173, 176 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ). It is an attempt to impeach a judgment offered as evidence of some right. *Jefferson Sav. & Loan Ass'n v. Adams,* 802 S.W.2d 811, 814 (Tex.App.—San Antonio 1990, writ denied). It is an attack made by or in an action or proceeding that has an independent purpose, i.e., a purpose other than impeaching or overturning the judgment. BLACK'S LAW DICTIONARY 261 (6th ed.

1990). Appellants styled their suit in the trial court as one for trespass to try title. They argue that upon Minnie M. Kubala's death, the trial court lost jurisdiction over the divorce action and therefore, the court could not make any other orders concerning sales or divisions of property. Thus, the receiver's sale and the court's order approving that sale were void and the property is therefore, part of Minnie M. Kubala's estate. However, the claim that the receiver's sale to Janice Marie Simon and the deeds that followed were void is based on the alleged invalidity of the divorce decree rendered by the 309th District Court. The decree ordered the receiver in the divorce action to sell the real property and distribute the proceeds, as directed, to Minnie M. Kubala and Julius Kubala. Further, the decree stated that the court expressly reserved its right to make orders necessary to clarify and enforce the decree and this reservation did not effect the finality of the decree. Because the property claimed by appellants in this suit was clearly part of the property to be sold by the receiver pursuant to the divorce decree, they must, in order to make a claim to the real property in question, attack the decree. If the decree is valid, they have no cause of action.

In *Stewart Oil Co. v. Lee,* 173 S.W.2d 791 (Tex.Civ.App.—Fort Worth 1943, writ ref'd w.o.m.), Stewart Oil Company (Stewart Oil) brought a trespass to try title action against a partnership composed of M.E. Stewart, Roy Lee, trustee, and others to recover an interest in an oil and gas leasehold estate. 173 S.W.2d at 792. Stewart Oil claimed it was entitled to the interest in the leasehold under a lease dated May 11, 1942, from a guardian, X, of certain named minors. *Id.* The guardianship proceedings were pending in Dallas County, Texas. *Id.* Lee, Stewart, and the others claimed their interest under a lease date March 4, 1940, from a different guardian, Y, of the same minors. *Id.* That guardianship proceeding was pending in the probate court of Clay County, Texas. *Id.*

Stewart Oil claimed that the guardianship proceedings in Clay County were void, and therefore its interest in the leasehold was the valid one. *Id.* Stewart Oil conceded and the

appellate court agreed, that Stewart Oil's suit involved a collateral attack on the guardianship proceedings in Clay County. *Id.* at 792–93. Stewart Oil's suit was a collateral attack for the following reason: in order to make a valid claim to the leasehold interest, it would have to prove that the proceedings in Clay County were invalid because those proceedings, appointing Y as guardian of the minors predated the second guardianship proceeding by two years. The lease from Y to Lee, et al. was executed two years before the lease from X to Stewart Oil, thus, the earlier lease would control and Lee, et al. would have the interest in the leasehold. Therefore, in order to have any chance at success in its suit, Stewart Oil would have to attack the previous Clay County judgment appointing Y as guardian.

The court, recognizing Stewart Oil's claim as a collateral attack, stated that when "an action in trespass to try title is predicated upon the invalidity of a judgment by another court of record, under which the defendant claims, it will generally be regarded as purely a collateral attack on the judgment of such other court." *Id.* at 793.

This reasoning readily applies to the case before us. In order to have a chance to succeed in their trespass to try title action, appellants must prove that the divorce decree is invalid. Their claim to the real property in question is an attack on the previous judgment rendered by the 309th District Court because that judgment ordered the property to be sold and the proceeds divided between the parties. The sale and the deeds which appellants claim are void were accomplished pursuant to that judgment and appellees claim title to the property pursuant to that judgment. Therefore, appellants' action is purely a collateral attack. Because we have determined that appellants' action is a collateral attack, we must now determine if it is a proper collateral attack.

 The judgment of a court of general jurisdiction is not subject to collateral attack in another court of equal jurisdiction unless the judgment complained of is void. *Browning v. Placke,* 698 S.W.2d 362 (Tex.1985); *Holloway v. Starnes,* 840 S.W.2d 14 (Tex. App.—Dallas 1992, writ denied). In order to be subject to a collateral attack, the judgment must be void and not merely voidable. *Wilson v. Texas Dept. of Public Safety,* 678 S.W.2d 494 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). A judgment is void only when the court rendering judgment had "no jurisdiction of the parties, no jurisdiction of the subject matter, no jurisdiction to enter the judgment, or no capacity to act as a court." *Cook v. Cameron,* 733 S.W.2d 137, 140 (Tex.1987) (quoting *Browning,* 698 S.W.2d at 363.)); *Bakali v. Bakali,* 830 S.W.2d 251 (Tex.App.—Dallas 1992, no writ).

 As with other final, unappealed judgments, divorce judgments are not vulnerable to collateral attack unless they are void. *See Shoberg v. Shoberg,* 830 S.W.2d 149, 152 (Tex.App.—Houston [14th Dist.] 1992, no writ) (citing *Berry v. Berry,* 786 S.W.2d 672, 673 (Tex.1990)). Further, agreed or consent judgments have the same binding force and effect as judgments resulting from a trial before the court or the jury, and are subject to collateral attack only if the rendering court did not have the jurisdiction to render the judgments. *Block v. Employers Cas. Co.,* 723 S.W.2d 173 (Tex.App.—San Antonio 1986), *aff'd,* 744 S.W.2d 940 (Tex. 1988); *Sawyer v. Smith,* 552 S.W.2d 936, 940 (Tex.Civ.App.—Waco 1977, writ ref'd n.r.e.). The question, thus, is whether any of appellants' complaints about the divorce decree go to the court's jurisdiction, that is, if the appellants' contentions are true, do they render the judgment of the 309th District Court void? We hold that they do not.

Appellants first argue that the divorce decree was void because it was entered without the valid consent of Minnie M. Kubala and therefore, it was not effective as a consent decree or an agreed judgment. Appellants point out that Minnie M. Kubala had been declared non compos mentis by the probate court, before the hearing on the divorce decree was held and before the court entered its judgment. Thus, she lacked the capacity to consent to the decree. Further, Biaza could not legally act as guardian for Minnie M. Kubala because she failed to post the bond required by the probate court. Thus, even though Biaza admitted on the record, in open court, that she consented to the terms

of the decree, her consent was invalid. Appellants point out that the decree was not signed by Minnie M. Kubala, her attorney, Ben Walker, Biaza, the "guardian," or the attorney ad litem appointed by the court to represent Minnie M. Kubala's interests. The decree was signed by J.B. Williamson, Biaza's attorney.

 A valid consent judgment cannot be rendered by a court when the consent of a party to it is wanting. *Sawyer*, 552 S.W.2d at 939. However, if one wishes to contend that there was no consent or agreement to the judgment, he or she must do so by direct attack upon the judgment and cannot do so in a collateral proceeding. *Id.* at 939–40. Therefore, any claim by appellants that the judgment was void for lack of consent does not concern the jurisdiction of the court and is an improper collateral attack. If appellants wished to contest the validity of the decree based on lack of consent, they should have done so by direct appeal.[5]

Appellants next argue that the divorce decree was interlocutory and not a valid, final judgment and thus, their claim is not a collateral attack. Appellants claim the judgment was not final because Exhibits A and B to the divorce decree, which purported to award certain items of personal property to Minnie M. and Julius Kubala individually, are referenced in the decree as items that the receiver was not to sell rather than being referenced under decretal words expressly awarding the property in the exhibits to the parties. In other words, the property listed in the exhibits was not awarded to the parties by language in the decree; rather, the decree ordered the receiver not to sell the items in the exhibits and the actual awards were specified by the exhibits.

 In divorce cases, a decree that fails to dispose of the property of either party is interlocutory and unappealable. *In the Matter of the Marriage of Johnson*, 595 S.W.2d 900, 902 (Tex.Civ.App.—Amarillo 1980, writ dism'd); *see Garrison v. Mead*,

553 S.W.2d 25, 26 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ). A trial court is not permitted to sever the property divisions from the divorce action and create a final judgment. *See Johnson*, 595 S.W.2d at 902–03; *Garrison*, 553 S.W.2d at 26. The reason for this is that section 3.63 of the Texas Family Code states that "in a decree of divorce . . . the court shall order a division of the estate of the parties." TEX.FAM.CODE ANN. § 3.63(a) (Vernon 1993).

 If a judgment is not a consent or an agreed judgment, the rules applicable to the construction of judgments apply when interpreting the judgment. *See Haworth v. Haworth*, 795 S.W.2d 296, 298 (Tex.App.—Houston [14th Dist.] 1990, no writ). However, if a judgment is a consent or agreed judgment, it must be interpreted as if it were a contract between the parties, and the interpretation thereof is governed by the laws relating to contracts. *See Acosta v. Acosta*, 836 S.W.2d 652, 654 (Tex.App.—El Paso 1992, writ denied); *Haworth*, 795 S.W.2d at 298; *Johnson v. Johnson*, 572 S.W.2d 364, 365 (Tex.Civ.App.—Amarillo 1978, no writ). The judgment in this case was clearly an agreed or consent judgment.[6] The judgment itself recites as follows: "The Court finds that the parties have agreed and consented to the terms of this Decree." The testimony from the divorce hearing, included in the record as part of the summary judgment proof in this case, shows Biaza consenting to the terms of the decree on the record in open court. Lastly, both the attorney for Biaza and Julius Kubala approved the decree as to form and substance. Thus, because the judgment was a consent or agreed judgment, the interpretation of the judgment is governed by the rules of contracts. The issue is whether under proper construction of the judgment, it disposed of the property listed in Schedules A and B.

 "The interpretation of a written contract is a question of the intention of the

---

5. We wish to note that when Biaza filed her motion for new trial a month after the divorce decree, she did not claim that the decree was invalid for lack of consent. Her only complaint was that the property division was unfair.

6. Even if the judgment in this case was not a consent judgment and we analyzed it under the rules of construction for judgments rather than contracts, our holding would be the same.

parties to it." *Reilly v. Rangers Management, Inc.,* 727 S.W.2d 527, 529 (Tex.1987) (citing *Jim Walter Homes, Inc. v. Schuenemann,* 668 S.W.2d 324, 330 (Tex.1984)). The courts give effect to the objective intentions of the parties as expressed in, or as apparent from, the writing. *Phillips Natural Gas Co. v. Cardiff,* 823 S.W.2d 314, 317 (Tex.App.—Houston [1st Dist.] 1991, writ denied) (citing *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968)); *Zieben v. Platt,* 786 S.W.2d 797, 800 (Tex.App.—Houston [14th Dist.] 1990, no writ). To achieve this goal, the courts examine the entire writing in an effort to harmonize and give effect to all of the provisions of the contract so that none will be rendered meaningless. *Stinger v. Stewart & Stevenson Serv., Inc.,* 830 S.W.2d 715, 719 (Tex.App.—Houston [14th Dist.] 1992, writ denied) (citing *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983)). The language in the agreement should be given its plain grammatical meaning unless it definitely appears that the intention of the parties would be defeated by such meaning. *Reilly,* 727 S.W.2d at 529. Further, it is presumed that the parties intended to give effect to every clause in the agreement and did not intend to render any clause meaningless. *Cardiff,* 823 S.W.2d at 317.

▪ The decree provided that "those items of tangible personal property listed in Exhibit 'A' and Exhibit 'B'" were not to be sold by the court appointed receiver. Attached to the back of the decree were two documents, Schedules A and B. Clearly those documents were referred to by the court in the decree as Exhibits A and B because at the bottom of each document appears the designation "Exhibit A" or "Exhibit B," respectively. On the top of each document the cause number and name of the divorce action was listed. Schedule A listed 35 specific items of personal property and stated "Property to MINNIE MAE KUBALA." Schedule B listed eighteen items of personal property and stated above list,

"Property to JULIUS J. KUBALA, JR." When read with the rest of the judgment, this language was clearly intended to divide the property listed to the designated individual.

The decree does not "except" the property in Schedules A and B from division as claimed by appellants, it simply tells the receiver not to sell the property. When the entire judgment is examined, it is clear that by its reference to Exhibits A and B, and the language in the exhibits dividing the property, the intent was to divide the property in the exhibits to effect a complete property division. Even without decretal language ordering the property division, the court's reference to the Schedules in the decree and the language in the Schedules were enough to indicate that the court intended to award the property in Schedule A to Minnie M. Kubala, and the property in Schedule B to Julius Kubala. *See Constance v. Constance,* 544 S.W.2d 659, 660–61 (Tex.1976). Because the judgment disposed of the property in Schedules A and B it was final and therefore, not subject to collateral attack.

Appellants next claim that the judgment was not final, and therefore subject to attack because the trial court granted appellants' motion for new trial on March 22, 1985. Though the trial court set aside this order by subsequent order dated August 15, 1985, appellants complain trial court could not grant the motion to set aside and reinstate the previous judgment. They contend that once the trial court granted their motion for new trial, the December 14, 1984, order was vacated and could not be reinstated without another trial. We disagree.

Appellants' argument presents the question of when a trial court may rescind its order granting a new trial and reinstate a previously vacated judgment.[7] In *Fulton v. Finch,* 162 Tex. 351, 346 S.W.2d 823, 827 (1961), the court reasoned that it could be done at any time when the trial court had the power to deny the motion for new trial in the first place.[8] *See also Homart Dev. Co. v.*

---

7. The confusion in this area of the law was recently brought to the forefront in a paper prepared for an appellate practice seminar. *See* P. Michael Jung, *Post–Trial Motions,* in UNIVERSITY OF

HOUSTON APPELLATE PRACTICE SEMINAR, F, F–17 (1994).

8. At the time *Fulton v. Finch,* 162 Tex. 351, 346 S.W.2d 823, 827 (1961) was decided, the rules

*Blanton,* 755 S.W.2d 158, 159 (Tex.App.—Houston [1st Dist.] 1988, orig. proceeding) (holding that any reconsideration of the order granting a new trial must be accomplished within 75–day period); TEX.R.CIV.P. 329b(c). Under the current Rules of Civil Procedure, that would mean that the trial court would have seventy-five days after judgment to "ungrant" a motion for new trial. *See* TEX.R.CIV.P. 329b(c).

Two recent cases have added to the seventy-five day period the thirty days of plenary power that the court would have retained had the motion been denied on the seventy-fifth day, effectively giving a trial court 105 days to "ungrant" a motion for new trial. *Gates v. Dow Chemical Co.,* 777 S.W.2d 120, 123 (Tex.App.—Houston [14th Dist.] 1989), *judgment vacated by agr.,* 783 S.W.2d 589 (Tex.1989); *Wood v. Component Constr. Corp.,* 722 S.W.2d 439, 442 (Tex.App.—Fort Worth 1986, no writ); *see* TEX.R.CIV.P. 329b(e). Thus, some courts hold that the trial court has seventy-five days to grant an order setting aside a previous order granting a motion for new trial; others hold that the court has 105 days.

In the most recent Texas Supreme Court opinion on this issue, the court reaffirmed the trial court's power to "ungrant" a motion for new trial within the seventy-five days and held that the court of appeals erred in holding that a trial court does not have the authority to vacate an order for new trial during the seventy-five day period. *Fruehauf Corp. v. Carrillo,* 848 S.W.2d 83, 84 (Tex.1993) (citing *Fulton,* 346 S.W.2d at 827). However, in its reasoning, the court stated that a trial court has plenary power over its judgment until it becomes final and retains continuing control over interlocutory orders and has the power to set aside those orders any time before a final judgment is entered. *Carrillo,* 848 S.W.2d at 84. Because an order granting a new trial is an unappealable, interlocutory order, *id.,* the court thus retains continuing control over orders granting new trials until a final judgment is entered. *See id.* Based on this reasoning, it appears

provided that all motions had to be determined within 45 days after the motion for new trial was

that a new trial may be "ungranted" at any time before a new final judgment. *See id.* This appears to be the most logical result based on the well-established principle that orders granting new trials are interlocutory and it harmonizes these orders with the rules pertaining to other interlocutory orders. *But see Hunter v. O'Neill,* 854 S.W.2d 704, 705–06 (Tex.App.—Dallas 1993, orig. proceeding) (post-*Carrillo* case adhering to the 75–day rule).

 Several cases cited by appellant hold that a once a trial court grants a motion for new trial, the court is without authority to set aside that order and reinstate the vacated judgment without another trial. Most of these cases pre-date all of the cases cited above, and based on the holdings in *Fulton* and *Carrillo* have been implicitly overruled. We hold, based on the court's reasoning in *Carrillo,* that a trial court has authority to rescind its order granting a motion for new trial and reinstate the vacated judgment any time before a new final judgment is signed. Therefore, appellants' claim that there was never a final judgment in the divorce action is without merit. The judgment of divorce became final thirty days after the court set aside its order granting a new trial and reinstated the judgment.

Lastly, appellants claim that because the judgment in the divorce action was never final, the 309th District Court lost jurisdiction over the action upon Minnie M. Kubala's death in January of 1987. Because we have held that the judgment became final in 1985, this contention is without merit.

██ The judgment rendered by the 309th District Court is a final judgment, is not void, and appellants have failed to raise any meritorious attacks on the 309th District Court's jurisdiction. Thus, the trial court correctly granted summary judgment in favor of appellees because appellants suit is an improper collateral attack on the divorce decree rendered by the 309th District Court. A summary judgment will be affirmed if any of the theories advanced by the movant in its

filed.

motion for summary judgment are meritorious and relied on by the trial court. *See Maley v. 7111 Southwest Freeway, Inc.,* 843 S.W.2d 229, 234 (Tex.App.—Houston [14th Dist.] 1992, writ denied); *Kyle v. West Gulf Maritime Ass'n,* 792 S.W.2d 805, 807 (Tex. App.—Houston [14th Dist.] 1990, writ denied). Because the ground that appellants' suit is an improper collateral attack is sufficient to support the summary judgment in favor of appellees, it is unnecessary to address appellants' remaining contentions concerning the trial court's other grounds for granting summary judgment. *See Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989). Accordingly, appellants' five points of error are overruled and the judgment of the trial court is affirmed.