John A. DAUGHERTY, Jr., Appellant,

v.

AMERICAN MOTORISTS INSURANCE COMPANY, Appellee.

No. 14–96–01048–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

June 11, 1998.

George E. Cire, Cletus P. Ernster, Houston, for appellant.

Charles C. Brenning, III, Tonia Lea Lucio, Houston, for appellee.

Before MURPHY, C.J., and HUDSON and FOWLER, JJ.

## OPINION

HUDSON, Chief Justice.

This is an appeal from a take-nothing judgment. Appellant John A. Daugherty, Jr. ("Daugherty") filed suit against American Motorists Insurance Company ("American Motorists") to recover the cash value of his stolen automobile and additional damages related to the handling of his insurance claim. The trial court determined Daugherty was not entitled to the damages sought. In his sole point of error, Daugherty claims the trial court's finding was against the great weight and preponderance of the evidence. We affirm.

The record reflects that Daugherty purchased a 1994 BMW 740IL (hereafter referred to as BMW # 1) on January 12, 1994. The sales price of the vehicle was $58,148.88. With the addition of taxes and fees, Daugherty paid a total of $64,678.97 for the automobile. The car was stolen on February 15, 1994. Daugherty promptly reported the theft to American Motorists. On February 25, 1994, Daugherty submitted an affidavit of

vehicle theft to American Motorists in which he claimed a loss of $68,895.42.[1]

After investigating the claim, an adjuster called Daugherty's bookkeeper on March 16, 1994, and informed her that American Motorists had determined the cash value of the stolen vehicle to be $62,931.14. After subtracting a $500 deductible, the adjuster informed her that the total payoff would be $62,431.14. Because Daugherty was out of town, his bookkeeper did not communicate the offer to him. The following day, police recovered BMW #1 in Florida. At approximately 2:00 p.m., on March 17, 1994, the adjuster called Daugherty's bookkeeper and rescinded the offer. Daugherty did not learn of the offer until after it had been withdrawn.

BMW #1 was returned to Houston on April 4, 1994. It was inspected the following day. Approximately 3,000 additional miles were on the odometer. Plates bearing the vehicle identification number had been removed. A cellular car phone and CD player were also missing. After appraising the value of the vehicle and calculating the depreciation associated with the additional mileage, American Motorists tendered a check to Daugherty for $1,901.50 on April 7, 1994.

Daugherty refused the payment, and the parties were unable to reach a compromise settlement. In the meantime, Daugherty purchased a second BMW which was virtually identical to BMW #1. On May 30, 1994, Daugherty took delivery of the automobile. The total cost of BMW #2, including taxes and fees, was $62,355.34. At the time of trial, Daugherty was continuing to make payments on both BMW #1 and BMW #2.

Daugherty subsequently filed suit to recover $62,431.14, as well as additional damages for allegedly processing the claim in violation of the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM.CODE ANN. art. 17.41, et seq.; TEX. INS.CODE ANN. art. 21.21; and TEX. INS.CODE ANN. art. 21.55. The suit was tried to the court without a jury. The

trial court found the evidence insufficient to support Daugherty's claim and entered a take-nothing judgment. The trial court also denied Daugherty's motion for new trial. Daugherty claims in a single point of error that the trial court's finding was against the great weight and preponderance of the evidence.

When reviewing "factual sufficiency," we cannot reverse a decision of the fact finder unless the judgment is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. See Cain v. Bain, 709 S.W.2d 175, 176 (Tex.1986). As an appellate court, we are poorly equipped to evaluate the credibility of witnesses and we may not substitute our judgment for the trier of fact, even if a different answer could be reached upon review of the evidence. See Cain v. Pruett, 938 S.W.2d 152, 159 (Tex. App.-Dallas 1996, no writ). In other words, the decision below must (1) shock the conscience of the court, (2) be manifestly unjust, or (3) clearly demonstrate bias. See Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986).

Daugherty contends American Motorists effectively notified him it would pay his claim when, on March 16, 1994, it informed his bookkeeper it had determined the value of the stolen BMW to be $62,431.14. Daugherty further argues American Motorists was bound by the terms of the policy to pay him $62,431.14 within 5 days after notification. American Motorists, on the other hand, contends the communication of March 16 was merely an "offer" to pay $62,431.14. Because the offer was rescinded before it could be accepted, American Motorists claims it is not obligated to pay the sum.

■ The insurance policy contained an amendatory endorsement which provided, in pertinent part:

  i. Loss payment

    1) If we notify you that we will pay your claim, or part of your claim, we must

---

1. The claim for $68,895.42 matches Daugherty's anticipated cost of a replacement vehicle. Three days before submitting his affidavit of vehicle theft, Daugherty obtained an invoice for a "replacement vehicle" from the same dealership where he had previously purchased BMW #1.

Although virtually identical to BMW #1, the price of the second BMW was $61,769.00. With the addition of taxes and fees, the total price of BMW #2 was projected to be $68,895.42. Daugherty purchased and took delivery of BMW #2 on May 30, 1994.

pay within 5 "business days" after we notify you.

2) If payment of your claim or part of your claim requires the performance of an act by you, we must pay within 5 "business days" after the date you perform the act.

The policy amendment tracks, and effectively incorporates, the mandatory provisions of Article 21.55, section 4 of the Texas Insurance Code.[2] The purpose of this article is to ensure prompt payment of claims made against insurance policies. *See* TEX. INS. CODE ANN. art 21.55, § 8 (Vernon Supp.1998).

■ Both the policy and the Insurance Code provide that within 15 days after a claim has been filed, the insurer is obliged to begin an investigation of the claim and to request all items, statements, and forms the insurer reasonably believes will be required from the insured. *See* TEX. INS.CODE ANN. art. 21.55, § 2 (Vernon Supp.1998). Here, American Motorists acknowledged in writing its receipt of Daugherty's claim on February 17, 1994.[3] American Motorists thereafter requested, and Daugherty signed, an affidavit of vehicle theft in which he claimed a loss of $68,895.42. Daugherty signed the affidavit on February 25, 1994, and it was received by American Motorists on March 1, 1994.

**2.** If an insurer notifies a claimant that the insurer will pay a claim or part of a claim under Section 3 of this article, the insurer shall pay the claim not later than the fifth business day after the notice has been made. If payment of the claim or part of the claim is conditioned on the performance of an act by the claimant, the insurer shall pay the claim not later than the fifth business day after the date the act is performed. Surplus lines insurers shall pay the claim not later than the twentieth business day after the notice or date the act is performed.
TEX. INS.CODE ANN. art. 21.55, § 4 (Vernon Supp. 1998).

**3.** The "filing" of a claim triggers certain duties and time limits under both the policy and the Insurance Code. *See* TEX. INS.CODE ANN. art. 21.55, § 2 (Vernon Supp.1998). Here, the terms of the policy, require the insured to promptly give the insurer "notice of the loss." There is no requirement that this initial notice be in writing. The policy further provides that the insured must thereafter file a written "notice of claim."
A "claim" is simply a demand made by an insured, a policyholder, or a beneficiary for payment under the terms of an insurance policy or contract. *See* TEX. INS.CODE ANN. art. 21.55,

Under the terms of the policy, American Motorist was obliged, within 15 *business days* after receiving all of the necessary information and forms from Daugherty, to accept or reject his claim in writing. On March 16, 1994, while still well within the deadline for accepting or rejecting the claim, American Motorists told Daugherty's bookkeeper it had calculated Daugherty's loss to be almost $6,000 less than what he claimed. Whatever can be said of this communication, it does not appear to be a "notice of payment of claim."

First, both the policy and the Insurance Code indicate that a "notice of payment of claim" must be in writing. The policy states:

> After we receive the information we request, we must notify you *in writing* whether the claim will be paid or has been denied....
>
> \* \* \*
>
> If we notify you that we will pay your claim, or part of your claim, we must pay within 5 "business days" after we notify you.

(Emphasis added).[4]

Second, because there is a discrepancy of almost $6,000.00 between Daugherty's and

§ 1(3) (Supp.1998). By statute, "notice of claim" means any notification *in writing* to an insurer, by a claimant, that reasonably apprises the insurer of the facts relating to the claim. *See* TEX. INS CODE ANN. art. 21.55, § 1(5) (Vernon Supp.1998). A claim is "filed," therefore, when the insured gives the notice required by the policy. *See Mid–Century Ins. Co. v. Barclay*, 880 S.W.2d 807, 810 (Tex.App.-Austin 1994, writ denied).
Daugherty provided "notice of loss" when he notified his agent on February 16, 1994, that his automobile had been stolen. Although this notice does not appear to have been in writing, it was nevertheless accepted by American Motorists as the "notice of claim." The following day, on February 17, 1994, American Motorists acknowledged in writing its receipt of Daugherty's "notice of claim."

**4.** The Insurance Code provides:

> Sec. 3. (a) Except as provided by Subsections (b) and (d) of this section, an insurer shall notify a claimant *in writing* of the acceptance or rejection of the claim not later than the 15th business day after the date the insurer receives all items, statements, and forms re-

American Motorists' estimation of the loss, the call appears to be more in the nature of an offer than a notification that American Motorists was going to pay the claim.[5] Were we to hold that an oral offer constitutes notice of payment, negotiations between an insurer and its insured would be severely hampered.

■ Finally, even if we were to find that the communication of March 16, 1994, was a "notice of payment of claim," such notice was grounded upon the fact that Daugherty's car had not been recovered. We find nothing in the Insurance Code or the policy at issue which prevents the insurer from withdrawing its notice of payment if the facts and circumstances known to the insurer change significantly after the notice is given but before the claim is paid. Here, the change of circumstances, i.e., the recovery of Daugherty's automobile, favored the insurance company because the loss was not as great as had been previously calculated. However, it is just as conceivable that changing circumstances may favor the insured, i.e., the damage to the property is found to be more severe than previously believed. The purpose of the statutory deadline contained in Article 21.55 is to guarantee the prompt payment of claims made pursuant to policies of insurance; not to create a statutory windfall for one party or the other. See TEX. INS.CODE ANN. art. 21.55 § 8 (Vernon Supp.1998). Here, there is no evidence that American Motorists unreasonably sought to delay or postpone its obligation to pay Daugherty's claim.

We find the trial court's judgment is not contrary to the great weight and preponderance of the evidence. Accordingly, appellant's sole point of error is overruled and the judgment of the trial court is affirmed.

MURPHY, Chief Justice, dissenting.

Because I respectfully disagree with the majority's interpretation of the relevant contract provision and the characterization of acts taken by the insurer thereunder, I dissent. In order for the trial court to rule as it did, it had to impliedly find the communication of March 16 was not a "notification" of intent to pay Daugherty's claim. After reviewing the record, I believe this finding was so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

At trial, the adjuster freely admitted to the communication of March 16 and the $62,-431.14 figure. The adjuster attempted to characterize the communication as an "offer" of the actual cash value determination as a preliminary suggestion in establishing the amount it would pay to Daugherty. The adjuster then claimed Daugherty had failed to "accept" the offer before he rescinded it the next day. The trial court apparently adopted this description.

The insurance policy, however, did not require an offer and acceptance as part of the process of giving notification of intent to pay the claim.[1] See Fisk Elec. Co. v. Constructors & Assocs., Inc., 888 S.W.2d 813, 814 (Tex.1994) ("[i]ssues of contract interpretation are determinable as a matter of law"). The insurance contract's loss payment provision only required a simple statement of intent to pay Daugherty's claim for the insurance company's liability for payment to vest.

---

quired by the insurer, in order to secure final proof of loss.

\* \* \*

Sec. 4. If an insurer notifies a claimant that the insurer will pay a claim or part of a claim *under Section 3 of this article,* the insurer shall pay the claim not later than the fifth business day after the notice has been made.

TEX. INS.CODE ANN. art. 21.55, § 3(a) & 4 (Vernon Supp.1998) (Emphasis added).

5. This seems also to have been the conclusion drawn by Daugherty's attorney who wrote to Daugherty's insurance agent on April 25, 1994, complaining of the $1,900 "offer." In this letter, Daugherty's attorney wrote:

Kent D. LaPrarie, of American Motorists Insurance Company, *offered* $62,431.14 ($62,931.14 less $500.00 deductible) to replace the car and then withdrew that *offer,* before it could be accepted, once the car was located.

(Emphasis added).

1. The policy provided for an appraisal and independent evaluation in the event the insurance company and Daugherty disagreed on the amount of loss. Nevertheless, the insurance company does not contend the March 16 communication should be construed under this provision.

The record demonstrates that on March 16, the claims adjuster talked with Daugherty's bookkeeper, whom he had regularly contacted and knew to be Daugherty's representative in receiving reports on the claim, and informed her the payoff on the claim would be $62,431.14. He noted the amount represented the actual cash value of the vehicle minus Daugherty's deductible. This conversation took place at the end of the period in which the insurance company was obligated to determine whether to pay or deny Daugherty's claim and was two weeks after the method for determining actual cash value had been communicated to Daugherty's representative. The communication also followed, by two days, a call by the claims adjuster's supervisor informing him it was "ok to settle with the insured" for an amount which reflected the $62,431.14. The claims adjuster admitted he did not have the authority to settle a claim on his own and that his supervisor was the one who gave him the authority to settle for the quoted amount. Following the communication from the supervisor, the claims adjuster's file notes that on March 16th he called the Houston Police Department and verified the vehicle had not been recovered. Soon thereafter, the adjuster made his call to Daugherty's representative. The foregoing evidence clearly indicated the fact that the communication of March 16 was a "notification" of intent to pay the claim.

As to the majority's contention that the notification was required to be in writing to be operative, I believe it is clear the parties did not intend such a requirement to control whether the insurance company's obligation to pay had vested. *See Biaza v. Simon*, 879 S.W.2d 349, 356 (Tex.App.—Houston [14th Dist.] 1994, writ denied) (noting that contract language should be given its plain meaning, unless it appears such meaning would defeat the intention of the parties). The insurance company notes the requirement of a writing in amendatory provision (f), which provides

    f. After we receive the information we request, we must notify you in writing

whether the claim will be paid or has been denied or whether more information is needed:

    1) Within 15 "business days"; or

    2) Within 30 days if we have reason to believe the loss resulted from arson.

This provision puts an *onus on the insurance company* to quickly and efficiently resolve a claim. *See id.* The provision's intention would be defeated if the insurance company were permitted to avoid its quick and efficient resolution of a claim by its own failure to comply with the requirement that its notification be in writing.[2]

As to the insurance company's contention the communication was to Daugherty's representative who was without the power to accept its "offer," and the offer was revoked before Daugherty contacted them with an acceptance, I believe the notification provision did not require an offer and acceptance to be effective. Therefore, I find this contention to be unconvincing.

For these reasons, I dissent from the majority's disposition of the case. I would reverse the trial court's finding that the insurance company did not notify Daugherty of its intent to pay the replacement costs for his stolen automobile and remand the case to the trial court for further determinations on Daugherty's remaining causes of action.

---

**2.** By interpreting the provision as the majority has, the insurance company has incentive not to put their notification of an insured in writing. In effect, two wrongs by the insurance company, the failure to put their notification of payment in writing and the failure to pay according to the notification, will provide a "right" for them.